**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. )))) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 1:23-cv-897 |
| ) | |
| ERWI LLC, MURTAZA HAYAT, and JOHN DOES 1 through 10, each of which is an Individual, Partnership, Business Entity, or Unincorporated Association, ))))) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ))))))) | |

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax") file this Verified Complaint against Erwi LLC, Murtaza Hayat, and John Does 1 through 10, each of which is an individual, partnership, business entity, or unincorporated association (all defendants, collectively, "Defendants") and in support thereof alleges as follows:

**NATURE AND BASIS OF ACTION**

1.      This action has been filed to combat counterfeiters who are trading on the fame and goodwill of Nutramax's PROVIABLE and NUTRAMAX LABORATORIES trademarks by advertising, selling, and/or offering for sale counterfeit PROVIABLE products. This action is intended to protect consumers – and their beloved pets – from potentially dangerous counterfeit

probiotic supplements sold by Defendants, including at the online retailer Amazon.com, Inc. ("Amazon").

2.    These counterfeit products, the composition of which is completely unknown, may pose an immediate and serious threat to the safety and well-being of companion animals such as dogs and cats.

3.    Defendants' actions constitute trademark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under the common law of the state of Texas; unfair competition under the common law of the state of Texas; and copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501. Nutramax seeks temporary, preliminary, and permanent injunctive relief, as well as actual and statutory damages, exemplary damages, disgorgement of profits, costs, and reasonable attorneys' fees.

## THE PARTIES

4.    Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Labs is the owner of the well-known PROVIABLE and NUTRAMAX LABORATORIES trademarks which identify probiotic supplements for companion animals sold to consumers throughout the United States and abroad.

5.    Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Vet also maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Vet is the licensee of

the well-known PROVIABLE and NUTRAMAX LABORATORIES trademarks which Nutramax Vet uses to identify probiotic supplements for companion animals sold to consumers throughout the United States and abroad.

6.      For ease of reference and the convenience of the reader, Nutramax Labs and Nutramax Vet are referred to hereinafter collectively as "Nutramax." Such references incorporate the fact that Nutramax Labs conducted the research, marketing, distribution, and selling of PROVIABLE supplements until 2013, and that Nutramax Vet commenced those activities starting in 2013.

7.      Defendant Erwi LLC ("Erwi") is a Texas Limited Liability Company that lists a principal place of business at 5900 Balcones Drive, Suite 4712, Austin, Texas 78731 in its Texas business filing. However, this address appears to be false, as the office number in this address does not appear to exist according to a pre-filing third-party investigation conducted on behalf of Nutramax. Until at least Friday, July 28, 2023, Erwi advertised, offered for sale, and sold counterfeit PROVIABLE products to consumers throughout the United States, including in this District, through the e-commerce platform Amazon using the account name LIBZO MEX.

8.      Defendant Murtaza Hayat is the managing member of Erwi. Upon information and belief, Hayat personally authorized, directed, and/or participated in Erwi's infringing activities complained of herein.

9.      Upon information and belief, Defendants John Doe 1 through 10 are individuals, partnerships, business entities, or unincorporated associations who either 1) advertise, offer for sale, and sell counterfeit PROVIABLE products to consumers throughout the United States, including in this District, through the e-commerce platform Amazon (and, upon information and belief, other online outlets); 2) personally authorize, direct, and/or participate in such infringing

activities; or 3) know or have reason to know of these infringing activities and materially contribute property or other assistance to those activities.

10.    Based on Nutramax's experience in prior counterfeiting cases, Does 1 through 10 are likely residents of foreign jurisdictions with weak intellectual property laws, policies, and enforcement.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 because this action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

12.    This Court has supplemental jurisdiction over Nutramax's common law claims pursuant to 28 U.S.C. § 1367.

13.    Erwi is subject to personal jurisdiction in this Court it is "at home" in the state of Texas. Hayat is subject to personal jurisdiction in this Court because he has availed himself of the benefits of doing business in this state by incorporating a limited liability company under this state's laws. And all Defendants are subject to personal jurisdiction in this Court because they purposefully avail themselves of the benefits of doing business in the state of Texas by advertising, promoting, offering for sale and/or selling counterfeit PROVIABLE products to consumers located in this state, or aiding and abetting others in doing so. Defendants are thus committing tortious acts in Texas and have wrongfully caused Nutramax substantial injury in this state.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants, upon information and belief, are either residents of this district or non-resident aliens engaged in infringing activities and causing harm to Nutramax and consumers in this judicial district by advertising, offering to sell and/or selling counterfeit PROVIABLE products in this district.

## FACTUAL BACKGROUND

**I.     NUTRAMAX AND ITS PRODUCTS**

15.     Nutramax researches, develops, and sells high-quality, innovative health supplements that benefit animals and humans.

16.     Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely-trusted brands.

17.     Nutramax's wide variety of animal health supplements are utilized for several purposes, including to support intestinal, joint, liver, and immune health.

18.     Nutramax's health supplement products are widely regarded as being among the best in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

19.     Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and Nutramax devotes significant financial resources each year—in the form of marketing, advertising, and other initiatives—building its brand as a provider of high-quality, safe, and effective animal health supplements.

20.     By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Many of Nutramax's products are the most frequently recommended products by veterinarians in their respective categories.

21.     PROVIABLE is a supplement that contains a source of live (viable) probiotic microorganisms in multiple species with billions of beneficial microorganisms to help support

healthy intestinal balance. Added prebiotics help encourage growth of the beneficial microorganisms contained in the PROVIABLE products within the intestinal tract.

22.     PROVIABLE-DC, the specific product at issue in this case, is one of the most popular probiotic products in the small animal market. Nutramax's PROVIABLE-DC product is a single-use capsule, sold in multi-packs. To use, the pet owner administers the capsule to his or her pet, which may occur by opening the capsule and sprinkling the product, which is in powder form, over the pet's food.

23.     The probiotic ingredients of Nutramax's PROVIABLE-DC product are white in color and have a free-flowing powder consistency for easy administration to dogs and cats. True and correct images of Nutramax's PROVIABLE-DC product are shown below.



24.     Nutramax has generated significant sales of its PROVIABLE-DC product nationwide, including in this judicial district.

25.     Nutramax promotes its products through heavily trafficked internet websites located at the domain names <proviable.com> and <nutramaxlabs.com>, as well as at industry conferences and in various trade publications.

26.     Additionally, Nutramax, either directly or through authorized distributors, sells its products through several well-known online retailers, including Amazon.com and Chewy.com.

27.     Since at least as early as 2008, Nutramax, on its own and through its predecessors in interest, has continuously and exclusively used the PROVIABLE and NUTRAMAX LABORATORIES marks in interstate commerce to identify its PROVIABLE products, including in this state.

28.     Over the years, Nutramax has diligently protected its PROVIABLE and NUTRAMAX LABORATORIES trademarks and accompanying goodwill.

29.     The PROVIABLE and NUTRAMAX LABORATORIES marks appear prominently on all PROVIABLE products and in all advertising and marketing materials for those products.

30.     Through substantial advertising, promotion, and use, the PROVIABLE and NUTRAMAX LABORATORIES marks serve to identify products that originate from Nutramax alone, and the PROVIABLE and NUTRAMAX LABORATORIES marks are assets of significant value to Nutramax as well as symbols of substantial consumer goodwill.

31.     In recognition of Nutramax's exclusive right to use the PROVIABLE and NUTRAMAX LABORATORIES marks in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. No. 3,481,550 (PROVIABLE) and U.S. Reg. No. 2,231,260 (NUTRAMAX LABORATORIES). True and correct copies of these registration certificates are attached as Exhibit 1.

32.     The PROVIABLE and NUTRAMAX LABORATORIES registrations are valid and subsisting in law, were duly and legally issued, are *prima facie* evidence of the validity of the marks registered, and constitute constructive notice of Nutramax's ownership of these marks in accordance with Sections 7(b) and 22 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1072.

33.     The PROVIABLE and NUTRAMAX LABORATORIES registrations are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and, pursuant to Section 33(b) of the Act (15 U.S.C. § 1115(b)), constitute conclusive evidence of Nutramax's exclusive right to use the marks registered therein in commerce in the United States.

34.     By virtue of Nutramax's exclusive use of the PROVIABLE and NUTRAMAX LABORATORIES marks in interstate commerce, Nutramax is the exclusive owner of all right, title and interest in and to the PROVIABLE and NUTRAMAX LABORATORIES marks and the registrations thereof.

35.     The packaging design for Nutramax's PROVIABLE-DC product shown above at Paragraph 23 (the "Packaging Design") is an original work of creative authorship owned by Nutramax protected by copyright law.

36.     In recognition of the copyright Nutramax owns in the Packaging Design, the United States Copyright Office issued Nutramax Reg. No. VA 2-308-282 (the "Copyright Registration") covering the Packaging Design. A copy of the Copyright Registration is attached hereto as Exhibit 2.

37.     The Copyright Registration is valid and subsisting in law, was duly and legally issued, is *prima facie* evidence of the validity of Nutramax's copyright in the Packaging Design, and constitutes constructive notice of Nutramax's ownership of the copyright in the Packaging Design in accordance with 17 U.S.C. §410(c).

38.     The Copyright Registration was issued on July 13, 2022, and has an effective date of June 17, 2022—both well prior to the start of Defendants' actions complained of herein.

**II.     DEFENDANTS' UNLAWFUL CONDUCT**

39.     Unfortunately, the nutritional supplement industry, including the animal health supplement industry, is plagued by companies that use poor quality ingredients and combinations of ingredients to lower production costs and increase profitability. In some cases, sellers resort to outright counterfeiting using unknown ingredients—putting consumers, and their pets, at significant risk.

40.     Only days before filing this action, Nutramax confirmed that Defendants had engaged in the advertising, offering for sale, and/or sale of counterfeit PROVIABLE products under the seller name LIBZO MEX on at least e-commerce retailer Amazon.

41.     As part of their scheme to deceive consumers, Defendants sold the counterfeit PROVIABLE products through Amazon's third-party seller platform. As shown on the product listing for Defendants' counterfeit products on Amazon (Exhibit 3), despite being "[s]old by" LIBZO MEX, the counterfeit PROVIABLE product "[s]hips from" Amazon.

42.     Consumers, relying on Amazon's reputation, and the reputation of the PROVIABLE and NUTRAMAX LABORATORIES brands, have no reason to suspect the health supplement products they purchased on Amazon's platform are anything but genuine.

43.     In furtherance of the deceit, Defendants' counterfeit products are virtually exact replicas of the genuine articles, including the use of Nutramax's trademarks on the fake products to create the impression that Defendants' inferior and potentially dangerous products are authentic Nutramax products.

44.     At least two consumers intending to purchase Nutramax's products have instead unknowingly purchased 80-count blister packs of the counterfeit PROVIABLE-DC product from

Defendants via Amazon. The purchased goods were identified in the Amazon listings as genuine Nutramax products. Attached as Exhibit 4 is a true and correct copy of the Amazon order information for one of these customers, showing the product was sold by the Amazon seller LIBZO MEX.

45.     One purchaser of the counterfeit PROVIABLE-DC submitted a complaint to Nutramax reporting that the purchaser's dog became ill. The other purchaser submitted a complaint to Nutramax about the counterfeit PROVIABLE-DC product because the powder inside the capsules had become hard and crystalized—something that does not occur in genuine PROVIABLE-DC probiotic capsules.

46.     Both purchasers sent their product packages to Nutramax. Upon careful examination of the purchased products, Nutramax determined that they were in fact counterfeit. True and correct photographs of the counterfeit products purchased from Defendants are included in Exhibit 5.

47.     The counterfeit packaging features differences from genuine PROVIABLE packaging that confirm the product is counterfeit. By way of example, Nutramax embosses the lot number and expiration date on the bottom of each PROVIABLE-DC package; however, on the counterfeit packages, the lot number and expiration date are printed in ink on the bottom of the package. An image of the box package of a genuine PROVIABLE-DC product is shown below on the left, and the box package of a counterfeit PROVIABLE-DC product is on the right:





**Genuine PROVIABLE-DC**                    **Counterfeit PROVIABLE-DC**

48.    Further, although Defendants' counterfeit PROVIABLE packages are substantially similar to the Packaging Design in virtually every aspect (including text, stylization of text, color, images, shapes, and arrangement of elements on the package), Defendants' packages are missing some of the pink "bubble" designs featured on Nutramax's genuine PROVIABLE packages. In the images below, the difference is highlighted in the red boxes:





**Genuine PROVIABLE-DC**          **Counterfeit PROVIABLE-DC**

49.    Counterfeit products, such as the fake PROVIABLE-DC products sold by Defendants, pose an immediate threat to the safety of consumers and their pets.

50.    Even assuming the counterfeit products were harmless, because of the poor quality of the products consumers are likely to be disappointed by the products and attribute the poor quality and performance to Nutramax.

51.    This is evidenced by the fact that two consumers contacted Nutramax after being disappointed in the counterfeit PROVIABLE-DC products. It is further evidenced by the recent negative reviews from Amazon customers, such as the following, that the Defendants have

received on the LIBZO MEX seller account page for the counterfeit PROVIABLE products (see

Exhibit 6):

- "The capsules were hard as a rock. The probiotic usually is a powder that can be sprinkled on my dogs [*sic*] food. This was a hard yellow substance…."

- "The probiotic inside the capsules was brown and formed into a solid. I will have to throw it away as it's unusable and can't be returned."

- "I ordered proviable-dc 80 count. It arrivedin [*sic*] an unopened box. These are dated good until 4/2024. They were not powder filled. Instead they are a hard yellow lump inside the capsules. It's a factory defect…."

- "[C]apsules are supposed to be powder but they are crystallized. Afraid to use them."

52.     Further, consumers are fraudulently being deprived of the bargained-for exchange, the intestinal health support and balance their pets need, all to the reputational detriment of Nutramax and the PROVIABLE and NUTRAMAX LABORATORIES brands.

53.     Accordingly, the presence of counterfeit products such as these denigrate and tarnish the substantial goodwill Nutramax has labored to build in its PROVIABLE products, its other products, and in the company itself.

54.     Nutramax has no association or affiliation of any kind with the Defendants or their online businesses, and Nutramax has never authorized the Defendants to use the PROVIABLE or NUTRAMAX LABORATORIES marks or the Packaging Design, or to sell any PROVIABLE products.

55.     On information and belief, numerous consumers have been misled by Defendants into believing that the Defendants are selling genuine PROVIABLE products, when in fact the goods have now been confirmed as sophisticated, and unfortunately convincing, counterfeits.

56.     According to a pre-filing third-party investigation conducted on behalf of Nutramax, a website at <erwistore.com> lists a physical address matching the address in Erwi LLC's corporate registration. Also according to that investigation, a call to the phone number listed on that website, (737) 276-0907, returned an automated message that stated this number is not in service. The investigation also stated that an email to the email address on that website, sales@erwistore.com, returned an automated response stating that the message could not be delivered. A true and correct copy of the website at <erwistore.com> is attached hereto as Exhibit 7.

57.     The fact that Defendants' counterfeit products are such slavish imitations of Nutramax's genuine PROVIABLE products, and are offered to consumers via Amazon as being genuine Nutramax products, shows that Defendants' actions have been undertaken with malice, and constitute fraud upon consumers and upon Nutramax.

58.     As of July 28, 2023, Defendants' LIBZO MEX Amazon seller account no longer had any products listed for sale. However, as long as Defendants can continue to promote and sell their counterfeit products, Nutramax will lose its ability to control the use of its valuable marks. Upon information and belief, there is remaining stock of Defendants' counterfeit PROVIABLE-DC products in one or more of Amazon's fulfillment centers.

59.     Nutramax unfortunately has experienced counterfeiting of its products in the past, and sales of such products on e-commerce platforms such as Amazon. Upon information and belief, the sellers of such products, even once their initial seller account is shut down, can (and are likely to) easily create additional seller accounts through the use of false contact information and alternate, difficult-to-trace financial information.

60.     For example, in *Nutramax Labs., Inc. v. Pegato Big Save LLC*, Case No. 1:18-cv-03506-JPB (N.D. Ga. 2018), Nutramax similarly combatted Amazon sellers offering counterfeit PROVIABLE products, along with counterfeits of Nutramax's COSEQUIN and DASUQUIN products.

61.     During the course of discovery in that matter, Nutramax learned that, for nearly every Amazon seller account involved, the defendants had provided Amazon with false names and contact information (save for email addresses).

62.     Nutramax also learned that many of the defendants had provided checking account numbers to Amazon that, although they appeared to be tied to U.S. banks, were in fact tied to accounts at a third-party digital payment platform.

63.     Further investigation revealed that many of the defendants had *also* provided false name and contact information (save for email addresses) to the third-party payment platform, and that in many instances the third-party payment platform had been directed to send funds to accounts belonging to the defendants at banks based in China.

64.     Nutramax's experience with these types of counterfeiting cases highlights the need for swift, *ex parte* injunctive relief before the Defendants receive notice of this action. Otherwise, the Defendants could quickly open different seller accounts using false information, and could transfer funds to difficult-to-trace accounts and realize their ill-gotten gains.

## <u>COUNT I</u>
### Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)
### (Against all Defendants)

65.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

66.     The PROVIABLE and NUTRAMAX LABORATORIES marks serve to identify to the public goods that are offered by Nutramax alone, and the marks serve as symbols of the substantial goodwill Nutramax has built in its marks.

67.     Defendants are using counterfeit copies of Nutramax's federally registered PROVIABLE and NUTRAMAX LABORATORIES marks in interstate commerce without Nutramax's authorization or consent in connection with the sale and offering for sale of counterfeit goods in a manner that is likely to cause confusion, mistake, or deception as to whether the goods originate from Nutramax and/or as to whether the Defendants or their goods are sponsored or endorsed by, or associated or affiliated with, Nutramax.

68.     Defendants clearly have knowledge of Nutramax and their trademark rights and are intentionally using counterfeits of the PROVIABLE and NUTRAMAX LABORATORIES marks in an effort to pass themselves off as being Nutramax or as one of Nutramax's authorized retailers or distributors, which they are not.

69.     Defendants' conduct constitutes knowing and willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

70.     Nutramax has no adequate remedy at law, and if Defendants' actions are not enjoined, Nutramax will continue to suffer irreparable harm to its reputation and the goodwill of its valuable PROVIABLE and NUTRAMAX LABORATORIES marks.

71.     Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

72.     As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction; to a

seizure order pursuant to 15 U.S.C. § 1116(d); and to recovery of (1) an amount equivalent to three times Nutramax's actual damages or Defendants' profits, whichever is greater; (2) the costs of the action; and (3) reasonable attorneys' fees. As an alternative to (1), Nutramax may elect to recover statutory damages for willful counterfeiting in an amount not to exceed $2,000,000 per counterfeit mark per type of goods sold.

## COUNT II
### False Designations of Origin & False Descriptions (15 U.S.C. § 1125(a))
### (Against all Defendants)

73.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

74.     Defendants are knowingly using counterfeit imitations of the PROVIABLE and NUTRAMAX LABORATORIES marks without authorization or consent from Nutramax in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of counterfeit goods in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated or affiliated with, or sponsored or endorsed by Nutramax.

75.     Defendants' conduct constitutes false designations of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

76.     As a direct and proximate result of Defendants' conduct, Nutramax has suffered actual and irreparable harm to its reputation and goodwill for which no adequate remedy exists at law. Defendants' conduct will continue to cause such injury unless and until enjoined by this Court.

77.     Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

78.     As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) the Defendants' profits; (3) the costs of the action; and (4) because this is an exceptional case, reasonable attorneys' fees.

## COUNT III
**Texas Common Law Trademark Infringement**
**(Against all Defendants)**

79.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

80.     By virtue of its prior adoption and use in interstate commerce of the PROVIABLE and NUTRAMAX LABORATORIES marks in this judicial district and elsewhere, Nutramax has acquired, established, and owns common law trademark rights in those marks, which serve to identify to the public pet health supplements that are offered by Nutramax, and the goods offered in connection with those marks are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with Nutramax.

81.     Defendants are knowingly using counterfeit imitations of the PROVIABLE and NUTRAMAX LABORATORIES marks without authorization or consent from Nutramax in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of counterfeit goods in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated or affiliated with, or sponsored or endorsed by Nutramax.

82.    Defendants' conduct constitutes trademark infringement in violation of the common law of the state of Texas.

83.    As a direct and proximate result of Defendants' conduct, Nutramax has suffered actual and irreparable harm to its reputation and goodwill for which no adequate remedy exists at law. Defendants' conduct will continue to cause such injury unless and until enjoined by this Court.

84.    Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

85.    As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is entitled to recover (1) Nutramax's actual damages; (2) the Defendants' profits; (3) exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003; (4) the costs of the action; and (5) reasonable attorneys' fees.

### COUNT IV
### Texas Common Law Unfair Competition
### (Against all Defendants)

86.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

87.    By virtue of its prior adoption and use in interstate commerce of the PROVIABLE and NUTRAMAX LABORATORIES marks in this judicial district and elsewhere, Nutramax has acquired, established, and owns common law trademark rights in those marks, which serve to identify to the public pet health supplements that are offered by Nutramax, and the goods offered in connection with those marks are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with Nutramax.

88.     Defendants are knowingly using counterfeit imitations of the PROVIABLE and NUTRAMAX LABORATORIES marks without authorization or consent from Nutramax in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of counterfeit goods in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated or affiliated with, or sponsored or endorsed by Nutramax.

89.     Defendants' conduct constitutes unfair competition in violation of the common law of the state of Texas.

90.     As a direct and proximate result of Defendants' conduct, Nutramax has suffered actual and irreparable harm to its reputation and goodwill for which no adequate remedy exists at law. Defendants' conduct will continue to cause such injury unless and until enjoined by this Court.

91.     Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

92.     As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is entitled to recover (1) Nutramax's actual damages; (2) the Defendants' profits; (3) exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003; (4) the costs of the action; and (5) reasonable attorneys' fees.

## COUNT V
### Copyright Infringement (17 U.S.C. § 501)
### (Against all Defendants)

93.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

94.     The Packaging Design is an original work of creative authorship, and therefore protected by copyright law.

95.     Nutramax is the owner of all right, title, and interest to the copyright in the Packaging Design, as is reflected in the Copyright Registration.

96.     The design of the packaging for Defendants' counterfeit PROVIABLE-DC products is a flagrant copy of the Packaging Design.

97.     The fact that Defendants are selling counterfeit PROVIABLE-DC products using such a flagrant copy of the Packaging Design indicates that Defendants had access to, and were highly familiar with, the Packaging Design.

98.     Without Nutramax's knowledge, authorization, or consent, Defendants copied the Packaging Design for Defendants' counterfeit PROVIABLE-DC packaging, which is substantially similar to the Packaging Design in virtually every possible way.

99.     Defendants' unauthorized copying and distribution of the Packaging Design constitutes copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501.

100.    Defendants' infringement of the Packaging Design was done knowingly, willfully, deliberately, and with reckless disregard for Nutramax's rights.

101.    As a direct and proximate result of Defendants' copyright infringement, Nutramax has been damaged and Defendants have been unjustly enriched.

102.    As a direct and proximate result of Defendants' copyright infringement, Nutramax has suffered actual and irreparable injury for which no adequate remedy exists at law, and will continue to suffer irreparable harm unless this Court enters injunctive relief.

103.    Nutramax is entitled to a temporary, preliminary, and permanent injunction against Defendants prohibiting them from distributing, copying, reproducing, duplicating, revising, altering or otherwise using the Packaging Design and any materials or information related thereto

104.    Nutramax is entitled, pursuant to 17 U.S.C. § 503, to an order for the impoundment of Defendant's counterfeit PROVIABLE-DC packages.

105.    Nutramax is further entitled to (1) its actual damages and any of Defendants' profits not taken into account in computing those damages; (2) the costs of the action; and (3) reasonable attorneys' fees. As an alternative to (1), Nutramax may elect to receive statutory damages in an amount set by the Court of up to $150,000 for the willful infringement of the Packaging Design.

## JURY TRIAL

Nutramax hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of Defendants' unlawful conduct as alleged in Counts I through V of this Complaint, Nutramax respectfully prays that:

1.    The Court enter judgment that the PROVIABLE and NUTRAMAX LABORATORIES marks and the copyright in the Packaging Design are valid and enforceable; that Nutramax owns the marks and copyright; that Defendants have infringed the marks and engaged in the sale of counterfeit products in violation of 15 U.S.C. § 1114; that Defendants have used false designations of origin and engaged in unfair competition in their advertising, promotion and sale of counterfeit products in violation of 15 U.S.C. § 1125(a); that Defendants have infringed the marks in violation of Texas common law; that Defendants have engaged in unfair competition in violation of Texas common law; and that the Defendants have infringed the copyright in the Packaging Design in violation of 17 U.S.C. § 501;

22

2.      The Defendants, their affiliates, officers, agents, servants, employees, attorneys, representatives, and all persons acting for, with, by, through, under, or in active concert with them, be preliminarily and permanently enjoined and restrained from:

(a)      using the PROVIABLE or NUTRAMAX LABORATORIES marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PROVIABLE or NUTRAMAX LABORATORIES product, or is not authorized by Nutramax to be sold in connection with the PROVIABLE or NUTRAMAX LABORATORIES marks;

(b)      passing off, inducing, or enabling others to sell or pass off any product as a genuine PROVIABLE or NUTRAMAX LABORATORIES product or any other product produced by Nutramax that is not Nutramax's product or not produced under the authorization, control, or supervision of Nutramax and approved by Nutramax for sale under the PROVIABLE or NUTRAMAX LABORATORIES marks;

(c)      shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Nutramax, nor authorized by Nutramax to be sold or offered for sale, and which bear the PROVIABLE or NUTRAMAX LABORATORIES marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(d)      reproducing, creating derivative works from, distributing, or displaying the Packaging Design in any manner; and

(e)      otherwise competing unfairly with Nutramax in any manner;

3.    The Court enter an Order that, upon Nutramax's request, Defendants and those in privity with Defendants and those with notice of the injunction, including any online retailers (including Amazon), social media platforms, internet search engines, and email service providers for the Defendants, shall:

(a)    disable and cease providing services for any accounts through which Defendants engage in the advertising, promotion, or sale of counterfeit PROVIABLE or NUTRAMAX LABORATORIES products using any of the PROVIABLE or NUTRAMAX LABORATORIES marks;

(b)    disable and cease displaying any advertisements used by or associated with Defendants in connection with the advertising, promotion or sale of counterfeit PROVIABLE or NUTRAMAX LABORATORIES products using the PROVIABLE or NUTRAMAX LABORATORIES marks;

(c)    disable any financial accounts they control associated with the Defendants and deposit any funds in the accounts into the registry of the Court; and

(d)    sequester and quarantine any counterfeit products and, at Nutramax's request, either deliver those products to Nutramax or certify their destruction;

4.    Any PayPal, banking, or other financial accounts owned or used by any of the Defendants be disabled and any funds in the accounts deposited into the registry of the Court;

5.    The Defendants be ordered to pay to Nutramax an amount equivalent to three times Nutramax's actual damages or Defendants' profits (whichever is greater) stemming from use of the PROVIABLE and NUTRAMAX LABORATORIES marks pursuant to 15 U.S.C. § 1117(b); or, in the alternative, the Defendants be ordered to pay Nutramax statutory damages in the amount

of $2,000,000 per PROVIABLE and NUTRAMAX LABORATORIES mark used by the Defendant pursuant to 15 U.S.C. § 1117(c)(2);

6.      The Defendants be ordered to pay Nutramax an amount equivalent to Nutramax's actual damages and Defendants' profits stemming from Defendants' copying of the Packaging Design; or, in the alternative, the Defendants be ordered to pay Nutramax statutory damages in the amount of $150,000 for willful infringement of the federally registered Packaging Design pursuant to 17 U.S.C. § 504;

7.      The Defendants be ordered to pay Nutramax exemplary damages on Nutramax's common law trademark infringement and unfair competition claims pursuant to Tex. Civ. Prac. & Rem. Code § 41.003;

8.      The Defendants be ordered to pay Nutramax its costs and reasonable attorneys' fees incurred in connection with its copyright claim pursuant to 17 U.S.C. § 505;

9.      This case be deemed an exceptional case and Nutramax be awarded recovery from Defendants of its costs and reasonable attorneys' fees incurred in connection with its Lanham Act claims pursuant to 15 U.S.C. § 1117;

10.      Nutramax be granted such other, different, and additional relief as the Court deems just and proper.

11.      The Defendants, within fourteen (14) days after service of judgment upon them, be ordered to file with the Court and serve upon Nutramax a written report under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the judgment.

Respectfully submitted, this 1st day of August, 2023.

By:    */s/ Brady Cox*
   Brady Cox
   brady.cox@alston.com
   Texas Bar No. 24074084

   ALSTON & BIRD LLP
   2200 Ross Avenue
   Suite 2300
   Dallas, Texas 75201
   Tel: (214) 922-3400
   Fax: (214) 922-3899

   Of counsel (*pro hac vice applications being submitted*):
   Jason D. Rosenberg
   *jason.rosenberg@alston.com*
   Georgia Bar No. 510855
   Uly S. Gunn
   *sam.gunn@alston.com*
   Georgia Bar No. 261871
   Mary Grace Gallagher
   *marygrace.gallagher@alston.com*
   Georgia Bar No. 121954

   ALSTON & BIRD LLP
   One Atlantic Center
   1201 West Peachtree Street
   Atlanta, GA 30309-3424
   Telephone: 404-881-7000

   *Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc.*

## VERIFICATION

I, Brett Corbly, declare as follows:

1.      I am of legal age and under no legal disability.

2.      I am General Counsel and Chief Strategy Officer for Plaintiff Nutramax

Laboratories, Inc.

3.      I have read the foregoing Verified Complaint and, under penalty of perjury of the

laws of the United States of America, hereby verify that, to the best of my knowledge, the factual

allegations contained therein are true and correct.

Executed on August 1, 2023.

_____

BRETT CORBLY