IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NUTRAMAX LABORATORIES, INC and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-897-DII |
| ERWI LLC, MURTAZA HAYAT, FLASHSHIP LOGISTICS, LLC, the Individuals, Partnerships, Business Entities, or Unincorporated Associations operating the Amazon Seller Accounts "hongtongxiantanlinmaoyiyouxiangongsi" and "ZHONGwanfulin" and the eBay Seller Accounts "tharakneth-0," "kinsaypua_01," "pham_4600," "dulanga_mart", "chelsehun- 3," "lotrant-28," "yaddowm," "kaykay1009," "damia-901," "phamli_40," "aliin-91," and JOHN DOES 1 through 20, each of which is an Individual, Partnership, Business Entity, or Unincorporated Association, | § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

### ORDER

Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax") have moved this Court on an emergency basis for (1) an *ex parte* temporary restraining order and, thereafter, a preliminary injunction against the Defendants Flashship Logistics, LLC ("Flashship"), the Individuals, Partnerships, Business Entities, or Unincorporated Associations operating the Amazon Seller Accounts "hongtongxiantanlinmaoyiyouxiangongsi" and "ZHONGwanfulin" and the eBay Seller Accounts "tharakneth-0," "kinsaypua_01," "pham_4600," "dulanga_mart", "chelsehun-3," "lotrant-28," "yaddowm," "kaykay1009," "damia-901," "phamli_40," "aliin-91," and John Does 11-20 (collectively, the "New Defendants") and (2) an *ex parte* seizure order against Defendant Flashship.

(Mot., Dkt. 31). Having read and considered Nutramax's motion and the relevant law, the Court will grant the motion in part and deny the motion in part.

## I. Background

Nutramax filed its original complaint in this action on August 1, 2023. (Compl., Dkt. 1). The complaint brought claims of federal trademark infringement and counterfeiting, copyright infringement, false designations of origin and false descriptions, Texas trademark infringement, and Texas unfair competition. (*Id.*). That same day, Nutramax moved for a temporary restraining order against Defendants Erwi LLC ("Erwi"), Murtaza Hayat ("Hayat"), and John Does 1–10, (Dkt. 3), which the Court granted on August 2, 2023, (Order, Dkt. 12). The Court then granted two extensions of the temporary restraining order before holding a preliminary injunction hearing on September 7, 2023. (Minute Entry, Dkt. 20). The defendants did not appear at the hearing, and the Court granted a preliminary injunction in favor of Nutramax. (Order, Dkt. 22). No defendants have appeared in the action at all, including Erwi and Hayat who were served on August 25, 2023 and October 30, 2023, respectively.

On December 13, 2023, Nutramax filed a motion for leave to file several sealed documents, including a motion for leave to file an amended complaint. (Dkt. 26). The Court allowed Nutramax to file an amended complaint under seal. (*See* Text Order, January 9, 2024). Nutramax's amended complaint adds the New Defendants to the suit and brings the same claims of federal trademark infringement and counterfeiting, copyright infringement, false designations of origin and false descriptions, Texas trademark infringement, and Texas unfair competition against them. (Am. Compl., Dkt. 30). Nutramax also filed a motion for leave to file a motion for an *ex parte* temporary restraining order and an *ex parte* seizure order against the New Defendants under seal. (Dkt. 29). The Court granted this motion and docketed Nutramax's motion for an *ex parte* temporary restraining order and an *ex parte* seizure under seal. (*See* Text Order, January 10, 2024; Dkt. 31).

## II. Motion for *Ex Parte* Temporary Restraining Order

Nutramax moves for the Court to enter a temporary restraining order against the New Defendants, contending that an *ex parte* order is necessary to protect consumers from "potentially dangerous counterfeit supplements currently being sold and distributed by the New Defendants." (Mot., Dkt. 31, at 2).

### A. Legal Standard

Federal Rule of Civil Procedure 65 permits the Court to issue a temporary restraining order without notice to the adverse party only where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The party moving for a temporary restraining order must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of [injunctive relief] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). The party seeking relief has the burden of proving each element. *Id.*

### B. Findings of Fact and Conclusions of Law

1. This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 because this action arises under the Federal Lanham Act, 15 U.S.C. §§ 1051 et seq., and the Copyright Act, 17 U.S.C. §§ 101 et seq.

2. This Court has supplemental jurisdiction over Nutramax's common law claims pursuant to 28 U.S.C. § 1367.

3. New Defendants are subject to personal jurisdiction in this Court because New Defendants are either at home in Texas and/or purposefully avail themselves of the benefits of doing business in the State of Texas by advertising, promoting, offering for sale and/or selling counterfeit COSEQUIN and/or DASUQUIN products to consumers located in this state, or aiding and abetting others in doing so, and by storing their counterfeit products in the State of Texas and distributing their counterfeit products from the State of Texas.

4. Nutramax is substantially likely to prevail on the merits of its claims for federal trademark infringement (15 U.S.C. § 1114(1)), federal unfair competition (15 U.S.C. § 1125(a)), trademark infringement and unfair competition in violation of the common law of Texas, and copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 et seq., for the following reasons:

   a. Nutramax has acquired valid and enforceable trademark rights in the COSEQUIN, DASUQUIN, and NUTRAMAX LABORATORIES marks through its prominent advertising, promotion, and sale of pet health supplements bearing the COSEQUIN mark since at least as early as 1992 and the DASUQUIN mark since at least as early as 2006, well prior to the events complained of herein.

   b. Nutramax's trademark rights are confirmed by U.S. Reg. Nos. 1,791,253 (COSEQUIN), 5,662,197 (COSEQUIN), 3,266,390 (DASUQUIN), 6,872,420 (DASUQUIN) and U.S. Reg. No. 2,231,260 (NUTRAMAX LABORATORIES). These trademark registrations are valid and subsisting in law, were duly and legally issued, are prima facie evidence of the validity of the marks registered, and constitute constructive notice of Nutramax's ownership of these marks in accordance with Sections 7(b) and 22 of the Trademark Act of 1946, 15 U.S.C. §§ 1057(b) and 1072.

c.  The NUTRAMAX LABORATORIES registration, as well as the '253 COSEQUIN

registration and '390 DASUQUIN registration, are incontestable pursuant to Section

15 of the Trademark Act of 1946 (15 U.S.C. § 1065) and, pursuant to Section 33(b)

of the Act (15 U.S.C. § 1115(b)), constitute conclusive evidence of Nutramax's

exclusive right to use the marks registered therein in commerce in the United States.

d.  The packaging designs for Nutramax's COSEQUIN Maximum Strength plus MSM

chewable tablets (250 count) and DASUQUIN with MSM for Large Dogs chewable

tablets (150 count) (the "Packaging Designs") are each original works of creative

authorship owned by Nutramax that are protected by copyright law and registered

with the United States Copyright Office (as Reg. Nos. 2-309-123, and 2-309-418,

respectively). These copyright registrations are valid and subsisting in law, were duly

and legally issued, are prima facie evidence of the validity of Nutramax's copyright

rights in the Packaging Designs, and constitute constructive notice of Nutramax's

ownership of the copyright in the Packaging Designs in accordance with 17 U.S.C.

§410(c).

e.  Nutramax is substantially likely to prevail on its trademark, false designation of

origin, and unfair competition claims because New Defendants are making, offering

to sell, selling, and distributing counterfeit versions of Nutramax's COSEQUIN

Maximum Strength plus MSM chewable tablets (250 count) and DASUQUIN with

MSM for Large Dogs chewable tablets (150 count) in connection with spurious

imitations of the COSEQUIN, DASUQUIN, and NUTRAMAX LABORATORIES

marks.

f.  Nutramax is substantially likely to prevail on its copyright claim because New

Defendants are selling their counterfeit COSEQUIN Maximum Strength plus MSM

chewable tablets (250 count) and DASUQUIN with MSM for Large Dogs chewable tablets (150 count) in packaging that is substantially similar to Nutramax's Packaging Designs (to which New Defendants clearly had access as evidenced by their slavish copying of the Packaging Designs).

5. Nutramax will suffer irreparable harm to the reputation and goodwill Nutramax has developed in the COSEQUIN, DASUQUIN, and NUTRAMAX LABORATORIES marks and its Packaging Designs due to consumers being disappointed by the non-genuine, counterfeit COSEQUIN Maximum Strength plus MSM chewable tablets and DASUQUIN with MSM for Large Dogs chewable tablets sold by New Defendants.

6. The balance of equities weighs in Nutramax's favor, as any damage or harm felt by New Defendants as a result of this injunction is attributable to New Defendants' intentional counterfeiting activity to trade on Nutramax's trademark and copyright rights.

7. The public interest will be served by this Order, as one of the essential purposes of the Lanham Act is to protect consumers from confusion and deception as to the source of goods.

Based on these findings and conclusions, the Court grants Plaintiffs' motion for an *ex parte* temporary restraining order.

### III. Motion for *Ex Parte* Seizure Order

In addition to requesting a temporary restraining order, Nutramax requests the Court grant an *ex parte* seizure order against Defendant Flashship Logistics, LLC ("Flashship"). (Mot., Dkt. 31).

### A. Legal Standard

Under 15 U.S.C. § 1116(d)(1)(A), in counterfeit trademark cases arising under 15 U.S.C. § 1114(1)(a), a court can issue an *ex parte* injunction "providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records

documenting the manufacture, sale, or receipt of things involved in such violation." 15 U.S.C. § 1116(d)(1)(A); *Vuitton v. White*, 945 F.2d 569, 572 (3d Cir. 1991). Courts should only issue *ex parte* seizure orders when the applicant can "show that the defendant would not comply with a lesser court order, such as a temporary restraining order, and that there was no means of protecting the court's authority other than to seize the property in question on an *ex parte* basis." *Vuitton*, 945 F.2d at 575 (citing Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12080, (1984)).

To obtain an *ex parte* seizure order, an applicant must give notice of its application to the United States attorney for the judicial district in which such order is sought. 15 U.S.C. § 1116(d)(2). An applicant must also base their application on an affidavit or verified complaint, 15 U.S.C. § 1116(d)(3), and include a description of the matter to be seized and its location, the seizure date, the security required, and the post-seizure hearing date. 15 U.S.C. § 1116(d)(5).

A court may issue a seizure order if it clearly appears from specific facts that "(i) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of Section 32 of [the Lanham] Act (15 U.S.C. § 1114); (ii) the applicant has not publicized the requested seizure; (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be seized will be located at the place identified in the application; (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the counterfeiter; and (vii) the person against whom seizure would be ordered . . . would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." 15 U.S.C. § 1116(d)(4)(B).

**B. Discussion**

In its motion, Nutramax alleges that Flashship "has distributed, and continues to distribute" counterfeit Nutramax products "for a number of Amazon and eBay third party sellers." (Mot., Dkt. 31, at 15; *see also* Corbly Decl., Dkt. 31-2). Nutramax has made several test purchases of counterfeit Nutramax products from the New Defendants, and each one was shipped from Flashship. (Corbly Decl., Dkt. 31-3, at 3). Nutramax requests that the Court grant seizure of all counterfeit Nutramax products and all documents and records relating to the sale and transfer of counterfeit Nutramax products from Flashship's business location in Richardson, Texas. (*See* Proposed Order, Dkt. 31-3, at 10–11).

Nutramax has met the procedural requirements for an *ex parte* seizure. It notified the United States Attorney for the Western District of Texas via letter on December 13, 2023 that it intended to apply for an *ex parte* seizure. (Notice, Dkt. 31-3, at 5). It also included in its application an affidavit from Brett Corbly, its General Counsel and Chief Strategy Officer, a description of the matter to be seized and its location, the time frame for the seizure, the requested security required, and the time frame for a post-seizure hearing. (Corbly Decl., Dkt. 31-3, at 2–3).

However, given the facts provided by Nutramax in its First Amended Complaint and its motion for *ex parte* seizure and attachments, the Court is not able to find that only an *ex parte* seizure order will achieve the purposes of the Lanham Act or that Flashship would destroy, move, or hide evidence of counterfeit products. Nutramax contends that there is a "significant risk that Flashship will distribute or destroy any remaining counterfeit absent the *ex parte* seizure order." (Mot., Dkt. 31, at 15). But Nutramax fails to provide any facts that would lead the Court to believe that Flashship would not comply with the temporary injunction issued in this Order.

Other courts have granted *ex parte* seizure applications when the applicant has shown that notice would cause the defendants to flee with the counterfeit goods. For example, in *Hand & Nail*

*Harmony, Inc. v. Guangzhou Cocome Cosmetics Co.*, No. 2:14-cv-01106-RFB-CWH, 2014 U.S. Dist. LEXIS 102525, *11 (D. Nev. July 15, 2014), the district court found that the defendants would likely flee the country with the counterfeit goods as they had no physical address in the United States or connection to a United States business entity. In *Otter Products, LLC v. Anke Group Indus. Ltd.*, No. 2:13-CV-00029-MMD, 2013 WL 5910882, *3 (D. Nev. Jan. 8, 2013), the district court authorized an *ex parte* seizure because the defendant only had a temporary presence in the United States and did not have a regular place of business or any assets tied to the United States. In *Vuitton*, the applicant was able to show the court that the street vendor defendants had previously ignored injunctions and had failed to appear in court. 945 F.2d at 570–71.

Here, Flashship is a Texas Limited Liability Company with its principal place of business in Texas. (Am. Compl., Dkt. 30, at 4). Nutramax does not allege that Flashship has failed to comply with court orders in the past or has a history of destroying evidence. Nutramax simply relies on general statements that counterfeiters have a propensity to act in defiance of courts and destroy evidence. (*See* Mot., Dkt. 31, at 15, 18). It appears that Flashship has physical ties to the United States, including its warehouse where Nutramax believes the counterfeit products are being stored, that would deter it from simply fleeing with the counterfeit products. While the Court acknowledges that there is some danger of the New Defendants registering new seller names or destroying counterfeit products, (*see id.* at 4), Nutramax has not shown that this risk is so substantial that a temporary restraining order is insufficient. "Courts have emphasized that caution should be exercised in granting an *ex parte* seizure order to take possession of inventory and other items at established businesses that engage in legitimate, as well as potentially unlawful, business activities." *Esquire Properties Trading, Inc. v. Starmax Enterprises, Inc.*, 2014 WL 12479298, at *13 (C.D. Cal. Dec. 8, 2014). The Court concludes that Nutramax has not sufficiently shown that Flashship will fail to

comply with a lesser order—here, the temporary injunction issued by this Court. Accordingly, the Court will deny Plaintiffs' motion for an *ex parte* seizure.

## IV. Conclusion

The Court **GRANTS** Plaintiffs' motion as to its request for a temporary restraining order. The Court **DENIES** Plaintiffs' motion as to its application for an *ex parte* seizure.

The Court **ENTERS** the following temporary injunctive relief:

1. New Defendants and each of their respective officers, directors, employees, shareholders, members, agents, representatives, parents, subsidiaries, and affiliates, and all those persons in active concert or participation with any of them who receive actual notice of this Order, are hereby **ENJOINED** and **RESTRAINED** until further order from this Court from the following:

    a. Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing, or sold in connection with, Nutramax's COSEQUIN, DASUQUIN, or NUTRAMAX LABORATORIES trademarks (or any other marks confusingly similar thereto) or Nutramax's Packaging Designs (or any other works substantially similar thereto).

    b. From destroying, selling off, transporting, or otherwise disposing of:

        i. Any products bearing and/or using Nutramax's COSEQUIN, DASUQUIN, and/or NUTRAMAX LABORATORIES marks (or any other marks confusingly similar thereto) or Nutramax's Packaging Designs (or any other works substantially similar thereto);

        ii. Any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Nutramax's COSEQUIN, DASUQUIN or NUTRAMAX LABORATORIES marks (or

        any other marks confusingly similar thereto) or Nutramax's Packaging Designs (or any other works substantially similar thereto);

    iii.  Any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any New Defendant, including, but not limited to, any assets held by or on behalf of any New Defendant.

2. Each New Defendant shall not transfer ownership of the Amazon Seller IDs "hongtongxiantanlinmaoyiyouxiangongsi" and "ZHONGwanfulin," during the pendency of this action, or until further order of this Court.

3. Each New Defendant shall not transfer ownership of the eBay seller accounts "tharakneth-0," "kinsaypua_01," "pham_4600," "dulanga_mart", "chelsehun-3," "lotrant- 28" "yaddowm," "kaykay1009," "damia-901," "phamli_40," or "aliin-91," during the pendency of this action, or until further order of this Court.

4. Each New Defendant shall preserve copies of all computer files relating to the use of the Amazon Seller IDs "hongtongxiantanlinmaoyiyouxiangongsi" and "ZHONGwanfulin" (the "Amazon Seller Accounts") and the eBay seller accounts "tharakneth-0," "kinsaypua_01," "pham_4600," "dulanga_mart", "chelsehun-3," "lotrant- 28" "yaddowm," "kaykay1009," "damia-901," "phamli_40," or "aliin-91," (the "eBay Seller Accounts") and shall take all reasonable steps available to retrieve computer files relating to the Amazon Seller Accounts and the eBay Seller Accounts that may have been deleted before the entry of this Order.

5. Upon receipt of notice of this Order, New Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms (including,

but not limited to, Amazon.com and eBay) and their related companies and affiliates shall, to the extent not already done:

    a.   immediately identify all financial accounts and/or sub-accounts, associated with the Amazon Seller Accounts and the eBay Seller Accounts;

    b.   identify all other accounts which transfer funds into, or to which funds are transferred from, such financial accounts and/or sub-accounts, or any other financial account subject to this Order;

    c.   restrain the transfer of all funds held or received for New Defendants' benefit or to be transferred into New Defendants' respective financial accounts, and any other financial accounts tied thereto; and

    d.   immediately divert those restrained funds to a holding account for the trust of the Court.

6.   Upon receipt of notice of this Order, New Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order (including, but not limited to, Amazon and eBay), and their related companies and affiliates, shall further, to the extent not already done, provide Nutramax's counsel with all data that details:

    a.   an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) to which the restrained funds are related;

    b.   the account transactions related to all funds transmitted into and out of the financial account(s) and sub-account(s) which have been restrained;

    c.   the historical sales for the New Defendants' listings that are alleged to infringe Plaintiff's trademarks and copyrights; and

      d.   the true identities along with complete contact information (including email addresses) of all New Defendants.

7.   Any New Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

8.   This Order shall apply to the Amazon Seller Accounts and the eBay Seller Accounts, any associated c-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by New Defendants for the purpose of counterfeiting and infringing Nutramax's COSEQUIN, DASUQUIN, or NUTRAMAX LABORATORIES trademarks (or any other marks confusingly similar thereto) or Nutramax's Packaging Designs (or any other works substantially similar thereto).

9.   Nutramax shall post a bond in the amount of **$2,500.00** with the Clerk of Court within ten (10) business days of this Order.

**IT IS ORDERED** that this Temporary Restraining Order shall remain in effect until **January 26, 2024**. Plaintiffs shall file a motion to extend the TRO on or before **January 25, 2024**. The Court will set a hearing for a preliminary injunction at a later date.

**IT IS ORDERED** that prior to the hearing on the preliminary injunction, Plaintiffs shall provide copies of the Amended Complaint, Motion, and this Order, on each New Defendant by any means calculated to provide reasonable notice, or as authorized by further order of this Court.

**IT IS ORDERED** that New Defendants shall have five (5) business days to comply with this Temporary Restraining Order following notice. Failure to comply with this Order may result in seizure of suspected counterfeit goods, sanctions, and other actions within this Court's broad discretion to enforce orders.

New Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116, 17 U.S.C. §§ 502 and 503, Federal Rule of Civil Procedure 65, and this Court's inherent authority.

**SIGNED** on January 12, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE