**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**

July 15, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ PG _____

DEPUTY

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC.<br><br>Plaintiffs,<br><br>v.<br><br>ERWI LLC; MURTAZA HAYAT; FLASHSHIP LOGISTICS LLC; JONNY HO, DỖ VĂN TÂN; DUTA GLOBAL COMPANY LIMITED; the Individuals, Partnerships, Business Entities, or Unincorporated Associations operating the Amazon Seller Accounts "hongtongxiantanlinmaoyiyouxiangongsi" and "ZHONGwanfulin" and the eBay Seller Accounts "tharakneth-0," "kinsaypua_01," "pham_4600," "dulanga_mart", "chelsehun-3," "lotrant-28," "yaddowm," "kaykay1009," "damia-901," "phamli_40," "aliin-91," "gabpulga0," "kgac.huy_5," "wenuk04," "chelakaka37," "mr.louie86," "heda-6844," "maleneth15," "saphun-0," "isukasan0," "dada-90," and "gina-7042"; and JOHN DOES 1 through 30, each of which is an Individual, Partnership, Business Entity, or Unincorporated Association,<br><br>Defendants. | Civil Action No. 1:23-cv-897<br><br>**JURY TRIAL DEMANDED** |

**THIRD AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories

Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax") file this Third Amended

Complaint against Erwi LLC; Murtaza Hayat; Flashship Logistics LLC; Jonny Ho; Dỗ Văn Tân;

Duta Global Company Limited; the individuals, partnerships, business entities, or unincorporated

associations behind the Amazon seller accounts "hongtongxiantanlinmaoyiyouxiangongsi" and

"ZHONGwanfulin" and the eBay Seller Accounts "tharakneth-0," "kinsaypua_01," "pham_4600," "dulanga_mart", "chelsehun-3," "lotrant-28," "yaddowm," "kaykay1009," "damia-901," "phamli_40," "aliin-91," "gabpulga0," "kgac.huy_5," "wenuk04," "chelakaka37," "mr.louie86," "heda-6844," "maleneth15," "saphun-0," "isukasan0," "dada-90," and "gina-7042"; and John Does 1 through 30, each of which is an individual, partnership, business entity, or unincorporated association (all defendants, collectively, "Defendants") and in support thereof alleges as follows:

## NATURE AND BASIS OF ACTION

1.       This action has been filed to combat counterfeiters who are trading on the fame and goodwill of Nutramax's federally registered trademarks by advertising, selling, and/or offering for sale counterfeit PROVIABLE, COSEQUIN, DASUQUIN, and DENAMARIN products. This action is intended to protect consumers – and their beloved pets – from potentially dangerous counterfeit supplements sold by Defendants, including at the online retailers Amazon.com, Inc. ("Amazon") and eBay, Inc. ("eBay"), or distributed by Defendants. Defendants have trafficked in counterfeit versions of at least the following of Nutramax's trademarks:

| Trademark | Mark Image | Reg. No. |
|---|---|---|
| NUTRAMAX LABORATORIES | | 2,231,260 |
| NUTRAMAX LABORATORIES (Stylized) | **NUTRAMAX** LABORATORIES | 4,077,241 |
| NUTRAMAX LABORATORIES VETERINARY SCIENCES (Stylized) | **NUTRAMAX** LABORATORIES VETERINARY SCIENCES, INC. | 4,654,181 |
| PROVIABLE | | 3,481,550 |
| COSEQUIN | | 5,662,197 |
| COSEQUIN | | 1,791,253 |
| DASUQUIN | | 3,266,390 |
| DASUQUIN | | 6,872,420 |
| DENAMARIN | | 3,288,596 |

| Trademark | Mark Image | Reg. No. |
|---|---|---|
| FCHG49 | | 2,574,169 |
| TRH122 | | 2,588,958 |
| NMX1000 | | 3,314,416 |
| #1 VETERINARIAN RECOMMENDED BRAND & Design |  | 3,869,100 |
| #1 JOINT HEALTH BRAND RECOMMENDED BY VETERINARIANS |  | 4,052,247 |

2.      These counterfeit products, the composition of which is completely unknown, may pose an immediate and serious threat to the safety and well-being of companion animals such as dogs and cats.

3.      Defendants' actions constitute trademark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under the common law of the state of Texas; unfair competition under the common law of the state of Texas; and copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501. In the alternative, Nutramax also alleges that defendants Flashship Logistics LLC and Jonny Ho are contributorily liable for the above causes of action. Nutramax seeks temporary, preliminary, and permanent injunctive relief, as well as actual and statutory damages, exemplary damages, disgorgement of profits, costs, and reasonable attorneys' fees.

## THE PARTIES

4.     Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Labs is the owner of the well-known PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, and NUTRAMAX LABORATORIES trademarks which identify probiotic, joint support, and liver support supplements for companion animals sold to consumers throughout the United States and abroad.

5.     Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Vet also maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Vet is the licensee of the well-known PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, and NUTRAMAX LABORATORIES trademarks which Nutramax Vet uses to identify probiotic, joint support, and liver support supplements for companion animals sold to consumers throughout the United States and abroad.

6.     For ease of reference and the convenience of the reader, Nutramax Labs and Nutramax Vet are referred to hereinafter collectively as "Nutramax." Such references incorporate the fact that Nutramax Labs conducted the research, marketing, distribution, and selling of PROVIABLE, COSEQUIN, DASUQUIN, and DENAMARIN supplements until 2013, and that Nutramax Vet commenced those activities starting in 2013.

7.     Defendant Erwi LLC ("Erwi") is a Texas Limited Liability Company that lists a principal place of business at 5900 Balcones Drive, Suite 4712, Austin, Texas 78731 in its Texas business filing. However, this address appears to be false, as the office number in this address does not appear to exist according to a pre-filing third-party investigation conducted on behalf of

Nutramax. Until at least Friday, July 28, 2023, Erwi advertised, offered for sale, and sold counterfeit PROVIABLE products to consumers throughout the United States, including in this District, through the e-commerce platform Amazon using the account name LIBZO MEX. Erwi was served with process in this case on August 25, 2023. [Dkt. 18].

8.      Defendant Murtaza Hayat is the managing member of Erwi. Upon information and belief, Hayat personally authorized, directed, and/or participated in Erwi's infringing activities complained of herein. Hayat was served with process in this case on October 30, 2023. [Dkt. 25].

9.      Defendant Flashship Logistics, LLC ("Flashship") is a Texas Limited Liability Company that lists a principal place of business at 5832 New Castle Drive, Richardson, Texas 75082-4136 in its Texas business filing. At least during the time period pertinent to this Complaint, Flashship was a shipping, logistics, and order fulfillment company, and it has distributed innumerable counterfeit COSEQUIN, DASUQUIN, and DENAMARIN products to consumers from an address in Texas. Flashship is a common thread among the Defendants selling counterfeit Nutramax products listed below in paragraphs 13-31. Many of the counterfeit products known to have been purchased from these particular Defendants were, according to the return address information on the packages, distributed by Flashship from its Richardson, Texas facility.

10.     Defendant Jonny Ho ("Mr. Ho") is an individual located at 420 Edgewood Drive Lebanon, PA 17042. Upon information and belief, Mr. Ho personally authorized, directed, and/or participated in infringing activities complained of herein and is a common thread among the Defendants Aliin, Gabpulga, Wenuk, and Mr.Louie (as defined below). Counterfeit products have been purchased from these Defendants through the seller accounts "aliin-91," "gabpulga0," "wenuk04," and "mr.louie86" and were, according to the return address information on the packages, distributed by Mr. Ho from his Lebanon, Pennsylvania address.

11.    Đỗ Văn Tân ("Mr. Tan") is an individual living in Vietnam and residing, upon information and belief, in an apartment located in the Sky2 development in Ecopark, Văn Giang, Hưng Yên Province, Vietnam. As detailed herein, Mr. Tan shipped the counterfeit Nutramax products at issue to Flashship and contracted with Flashship to fulfill orders and ship the counterfeit products to consumers. Mr. Tan also shipped counterfeit Nutramax products to Mr. Ho and had Mr. Ho fulfill orders and ship the counterfeit products to consumers. Upon information and belief, Mr. Tan, along with his business entity Duta Global Company Limited, is the ultimate source of the counterfeit products at issue in this case.

12.    Duta Global Company Limited ("Duta") is a Vietnam limited company with a listed business address of No. 14 Dong Tam, Area 2, Gia Loc Town, Gia Loc District, Hai Duong Province, Vietnam. Mr. Tan is the Director and Legal Representative of Duta. Upon information and belief, Mr. Tan operates his counterfeiting enterprise through Duta. Duta also paid some of the fulfillment fees that Flashship charged to Mr. Tan. Upon information and belief, Duta, along with Mr. Tan, is the ultimate source of the counterfeit products at issue in this case.

13.    The individuals, partnerships, business entities, or unincorporated associations doing business as "hongtongxiantanlinmaoyiyouxiangongsi" (collectively, "HongTong") with a business address listed on Amazon.com of (translated from Chinese) Hongdong County, No. 1019, Goudong Village, Dahuaishu Town, Linfen City, Shanxi Province, China 041600, have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform Amazon using the seller account name "ZHONGwanfulin" (formerly known as "hongtongxiantanlinmaoyiyouxiangongsi," with the Seller ID No. A36XB6AXU2Y16J). The counterfeit COSEQUIN product purchased from

HongTong was distributed by Flashship from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446.

14.    The individuals, partnerships, business entities, or unincorporated associations doing business as "tharakneth-0" ("Tharakneth") have advertised, offered for sale, and sold counterfeit COSEQUIN and DASUQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "tharakneth-0." The counterfeit COSEQUIN and DASUQUIN products purchased from "tharakneth" were distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Tharakneth was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

15.    The individuals, partnerships, business entities, or unincorporated associations doing business as "lotrant-28" ("Lotrant") have advertised, offered for sale, and sold counterfeit COSEQUIN and DASUQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "lotrant-28." The counterfeit COSEQUIN and DASUQUIN products purchased from "lotrant-28" were distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Lotrant was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

16.    The individuals, partnerships, business entities, or unincorporated associations doing business as "kinsaypua_01" ("Kinsaypua") have advertised, offered for sale, and sold counterfeit COSEQUIN and DENAMARIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "kinsaypua_01." The counterfeit COSEQUIN and DENAMARIN products purchased from "kinsaypua_01" were

distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Kinsaypua was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

17.    The individuals, partnerships, business entities, or unincorporated associations doing business as "pham_4600" ("Pham") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "pham_4600." The counterfeit COSEQUIN product purchased from "pham_4600" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Pham was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

18.    The individuals, partnerships, business entities, or unincorporated associations doing business as "chelsehun-3" ("Chelsehun") have advertised, offered for sale, and sold counterfeit COSEQUIN, DASUQUIN, and DENAMARIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "chelsehun-3." The counterfeit COSEQUIN, DASUQUIN, and DENAMARIN products purchased from "chelsehun-3" were distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Chelsehun was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

19.    The individuals, partnerships, business entities, or unincorporated associations doing business as "dulanga_mart" ("Dulanga") have advertised, offered for sale, and sold counterfeit DASUQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "dulanga_mart." The counterfeit DASUQUIN product purchased from "dulanga_mart" was distributed by Flashship and originated

from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Dulanga was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

20.    The individuals, partnerships, business entities, or unincorporated associations doing business as "Yaddowm" ("Yaddowm") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "yaddowm." The counterfeit COSEQUIN product purchased from "yaddowm" was distributed by Flashship (originating from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446) and Jonny Ho (originating from the address 420 Edgewood Drive Lebanon, PA 17042). Defendant Yaddowm was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

21.    The individuals, partnerships, business entities, or unincorporated associations doing business as "kaykay1009" ("KayKay") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "kaykay1009." The counterfeit COSEQUIN product purchased from "kaykay1009" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant KayKay was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

22.    The individuals, partnerships, business entities, or unincorporated associations doing business as "damia-901" ("Damia") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "damia-901." The counterfeit COSEQUIN product purchased from "damia-901" was distributed by Flashship and originated from its warehouse at

1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Damia was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

23.    The individuals, partnerships, business entities, or unincorporated associations doing business as "phamli_40" ("Phamli") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "phamli_40." The counterfeit COSEQUIN product purchased from "phamli_40" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446. Defendant Phamli was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

24.    The individuals, partnerships, business entities, or unincorporated associations doing business as "aliin-91" ("Aliin") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "aliin-91." The counterfeit COSEQUIN product purchased from "aliin-91" was distributed by Flashship (originating from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446) and Jonny Ho (originating from the address 420 Edgewood Drive Lebanon, PA 17042). Defendant Aliin was served with process on March 21, 2024 via email as authorized by the Court in its March 4, 2024 Order.

25.    The individuals, partnerships, business entities, or unincorporated associations doing business as "gabpulga0" ("Gabpulga") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "gabpulga0." Counterfeit COSEQUIN product purchased from "gabpulga0" was distributed by Flashship (originating from its warehouse at 1303

E Arapaho Road Suite 100 Richardson, TX 75081-2446) and Jonny Ho (originating from the address 420 Edgewood Drive Lebanon, PA 17042).

26.    The individuals, partnerships, business entities, or unincorporated associations doing business as "wenuk04" ("Wenuk") have advertised, offered for sale, and sold counterfeit COSEQUIN and DENAMARIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "wenuk04." Counterfeit COSEQUIN products purchased from "wenuk04" were distributed by Flashship (originating from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446) and Jonny Ho (originating from the address 420 Edgewood Drive Lebanon, PA 17042). Counterfeit DENAMARIN products purchased from "wenuk04" were distributed by Flashship (originating from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446).

27.    The individuals, partnerships, business entities, or unincorporated associations doing business as "chelakaka37" ("Chelakaka") have advertised, offered for sale, and sold counterfeit DASUQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "chelakaka37." The counterfeit DASUQUIN product purchased from "chelakaka37" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446.

28.    The individuals, partnerships, business entities, or unincorporated associations doing business as "mr.louie86" ("Mr.Louie") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "mr.louie86." Counterfeit COSEQUIN product purchased from "mr.louie86" was distributed by Flashship (originating from its warehouse at 1303

E Arapaho Road Suite 100 Richardson, TX 75081-2446) and Jonny Ho (originating from the address 420 Edgewood Drive Lebanon, PA 17042).

29.    The individuals, partnerships, business entities, or unincorporated associations doing business as "heda-6844" ("Heda") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "heda-6844." The counterfeit COSEQUIN product purchased from "heda-6844" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446.

30.    The individuals, partnerships, business entities, or unincorporated associations doing business as "maleneth15" ("Maleneth") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "maleneth15." The counterfeit COSEQUIN product purchased from "maleneth15" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446.

31.    The individuals, partnerships, business entities, or unincorporated associations doing business as "saphun-0" ("Saphun") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "saphun-0." The counterfeit COSEQUIN product purchased from "saphun-0" was distributed by Flashship and originated from its warehouse at 1303 E Arapaho Road Suite 100 Richardson, TX 75081-2446.

32.    The individuals, partnerships, business entities, or unincorporated associations doing business as "kgac.huy_5" ("KgacHuy") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-

commerce platform eBay using the seller account name "kgac.huy_5." According to the return address information on the shipping label, the counterfeit COSEQUIN product purchased from "kgac.huy_5" was allegedly distributed by Chewy and originated from its warehouse at 3380 NW 35th Avenue Ocala, FL 34475.

33.     The individuals, partnerships, business entities, or unincorporated associations doing business as "isukasan0" ("Isuk") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "isukasan0." According to the return address information on the shipping label, the counterfeit COSEQUIN product purchased from "isukasan0" was allegedly distributed by Chewy and originated from its warehouse at 3380 NW 35th Avenue Ocala, FL 34475.

34.     The individuals, partnerships, business entities, or unincorporated associations doing business as "dada-90" ("Dada") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "dada-90." According to the return address information on the shipping label, the counterfeit COSEQUIN product purchased from "dada-90" was allegedly distributed by Chewy and originated from its warehouse at 3380 NW 35th Avenue Ocala, FL 34475.

35.     The individuals, partnerships, business entities, or unincorporated associations doing business as "gina-7042" ("Gina") have advertised, offered for sale, and sold counterfeit COSEQUIN products to consumers throughout the United States through the e-commerce platform eBay using the seller account name "gina-7042." According to the return address information on the shipping label, the counterfeit COSEQUIN product purchased from "gina-

7042" was allegedly distributed by Chewy and originated from its warehouse at 3380 NW 35th Avenue Ocala, FL 34475.

36.     Upon information and belief, Defendants John Does 1 through 30 are individuals, partnerships, business entities, or unincorporated associations who either 1) advertise, offer for sale, sell, and/or distribute counterfeit PROVIABLE, COSEQUIN, DASUQUIN, and/or DENAMARIN products to consumers throughout the United States, including in this District, through the e-commerce platforms Amazon and eBay (and, upon information and belief, other online outlets); 2) personally authorize, direct, and/or participate in such infringing activities; or 3) know or have reason to know of these infringing activities and materially contribute property or other assistance to those activities.

37.     Based on Nutramax's experience in prior counterfeiting cases, Does 1 through 30 are likely residents of foreign jurisdictions with weak intellectual property laws, policies, and enforcement.

## JURISDICTION AND VENUE

38.     This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 because this action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

39.     This Court has supplemental jurisdiction over Nutramax's common law claims pursuant to 28 U.S.C. § 1367.

40.     Erwi and Flashship are subject to personal jurisdiction in this Court because they are "at home" in the state of Texas.

41. Hayat is subject to personal jurisdiction in this Court because he has availed himself of the benefits of doing business in this state by incorporating a limited liability company under this state's laws.

42. Mr. Tan, Duta, HongTong, Tharakneth, Kinsaypua, Pham, Chelsehun, Dulanga, Lotrant, Yaddowm, KayKay, Damia, Phamli, Aliin, Gabpulga, Wenuk, Chelakaka, Mr.Louie, Heda, Maleneth, and Saphun are subject to personal jurisdiction in this Court because they have availed themselves of the benefits of doing business in this state by shipping or arranging for the distribution of their products to or through Flashship in Texas.

43. Mr. Ho, KgacHuy, Isuk, Dada, and Gina are subject to personal jurisdiction in this Court because their shipments of counterfeit products, according to USPS tracking information, were processed in Texas despite the return labels associated with the shipments indicating addresses outside of Texas. Defendants are thus committing tortious acts in Texas and have wrongfully caused Nutramax substantial injury in this state.

44. All Defendants are subject to personal jurisdiction in this Court because they purposefully avail themselves of the benefits of doing business in the state of Texas by advertising, promoting, offering for sale and/or selling counterfeit PROVIABLE, COSEQUIN, DASUQUIN, and/or DENAMARIN products to consumers located in this state, or aiding and abetting others in doing so. Defendants are thus committing tortious acts in Texas and have wrongfully caused Nutramax substantial injury in this state.

45. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Erwi is a resident of this district and the remaining Defendants, upon information and belief, are either residents of this state (as is the case with Flashship), or non-resident aliens engaged in infringing activities and causing harm to Nutramax and consumers in this judicial district by advertising,

offering to sell, distributing, and/or selling counterfeit PROVIABLE, COSEQUIN, DASUQUIN, and/or DENAMARIN products in this district.

## FACTUAL BACKGROUND

### I.    NUTRAMAX AND ITS PRODUCTS

46.    Nutramax researches, develops, and sells high-quality, innovative health supplements that benefit animals and humans.

47.    Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely-trusted brands including PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN.

48.    Nutramax's wide variety of animal health supplements are utilized for several purposes, including to support intestinal, joint, liver, and immune health.

49.    Nutramax's health supplement products are widely regarded as being among the best in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

50.    Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and Nutramax devotes significant financial resources each year—in the form of marketing, advertising, and other initiatives—building its brand as a provider of high-quality, safe, and effective animal health supplements.

51.    By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Many

of Nutramax's products are the most frequently recommended products by veterinarians in their respective categories.

a. **PROVIABLE**

52.     PROVIABLE is a supplement that contains a source of live (viable) probiotic microorganisms in multiple species with billions of beneficial microorganisms to help support healthy intestinal balance. Added prebiotics help encourage growth of the beneficial microorganisms contained in the PROVIABLE products within the intestinal tract.

53.     PROVIABLE-DC, the specific product at issue in this case, is one of the most popular probiotic products in the small animal market. Nutramax's PROVIABLE-DC product is a single-use capsule, sold in multi-packs. To use, the pet owner administers the capsule to his or her pet, which may occur by opening the capsule and sprinkling the product, which is in powder form, over the pet's food.

54.     The probiotic ingredients of Nutramax's PROVIABLE-DC product are white in color and have a free-flowing powder consistency for easy administration to dogs and cats. True and correct images of Nutramax's PROVIABLE-DC product are shown below.



55.     Nutramax has generated significant sales of its PROVIABLE-DC product nationwide, including in this judicial district.

56.     Nutramax promotes its PROVIABLE products through heavily trafficked internet websites located at the domain names <proviable.com> and <nutramaxlabs.com>, as well as at industry conferences and in various trade publications.

57.     Additionally, Nutramax, either directly or through authorized distributors, sells its PROVIABLE products through several well-known online retailers, including Amazon.com and Chewy.com.

58.     Since at least as early as 2008, Nutramax, on its own and through its predecessors in interest, has continuously and exclusively used the PROVIABLE and NUTRAMAX LABORATORIES marks in interstate commerce to identify its PROVIABLE products, including in this state.

59. Over the years, Nutramax has diligently protected its PROVIABLE and NUTRAMAX LABORATORIES trademarks and accompanying goodwill.

60. The PROVIABLE and NUTRAMAX LABORATORIES marks appear prominently on all PROVIABLE products and in all advertising and marketing materials for those products.

61. Through substantial advertising, promotion, and use, the PROVIABLE and NUTRAMAX LABORATORIES marks serve to identify products that originate from Nutramax alone, and the PROVIABLE and NUTRAMAX LABORATORIES marks are assets of significant value to Nutramax as well as symbols of substantial consumer goodwill.

62. In recognition of Nutramax's exclusive right to use the PROVIABLE and NUTRAMAX LABORATORIES marks in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. No. 3,481,550 (PROVIABLE), U.S. Reg. No. 2,231,260 (NUTRAMAX LABORATORIES), U.S. Reg. No. 4,077,241 (NUTRAMAX LABORATORIES (Stylized)), U.S. Reg. No. 4,654,181 (NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. (Stylized)) (the three preceding marks referred to herein as the "Nutramax Laboratories Marks" and their corresponding registrations are referred to herein as the "Nutramax Laboratories Registrations"). True and correct copies of these registration certificates are attached as Exhibit 1.

63. The PROVIABLE registration and Nutramax Laboratories Registrations are valid and subsisting in law, were duly and legally issued, are *prima facie* evidence of the validity of the marks registered, and constitute constructive notice of Nutramax's ownership of these marks in accordance with Sections 7(b) and 22 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1072.

64.     The PROVIABLE registration and Nutramax Laboratories Registrations are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and, pursuant to Section 33(b) of the Act (15 U.S.C. § 1115(b)), constitute conclusive evidence of Nutramax's exclusive right to use the marks registered therein in commerce in the United States.

65.     By virtue of Nutramax's exclusive use of the PROVIABLE mark and Nutramax Laboratories Marks in interstate commerce, Nutramax is the exclusive owner of all right, title and interest in and to the PROVIABLE and Nutramax Laboratories Marks  and the registrations thereof.

66.     The packaging design for Nutramax's PROVIABLE-DC product shown above at Paragraph 54 (the "Proviable Packaging Design") is an original work of creative authorship owned by Nutramax protected by copyright law.

67.     In recognition of the copyright Nutramax owns in the Proviable Packaging Design, the United States Copyright Office issued Nutramax Reg. No. VA 2-308-282 (the "Proviable Copyright Registration") covering the Proviable Packaging Design. A copy of the Proviable Copyright Registration is attached hereto as Exhibit 2.

68.     The Proviable Copyright Registration is valid and subsisting in law, was duly and legally issued, is *prima facie* evidence of the validity of Nutramax's copyright in the Proviable Packaging Design, and constitutes constructive notice of Nutramax's ownership of the copyright in the Proviable Packaging Design in accordance with 17 U.S.C. §410(c).

69.     The Proviable Copyright Registration was issued on July 13, 2022, and has an effective date of June 17, 2022—both well prior to the start of Defendants' actions complained of herein.

### b. COSEQUIN and DASUQUIN

70.    COSEQUIN and DASUQUIN are joint health supplements that contain chondroitin sulfate and glucosamine to help support healthy joints in dogs and cats.

71.    COSEQUIN Maximum Strength plus MSM, the specific COSEQUIN product at issue in this case, is one of the most popular retail joint support supplement in the small animal market. Nutramax's COSEQUIN Maximum Strength plus MSM product is primarily sold as a chewable tablet and comes in bottles of various sizes, including a count of 250.

72.    True and correct images of Nutramax's COSEQUIN Maximum Strength plus MSM, 250 ct. product are shown below.



73.    Each bottle of COSEQUIN Maximum Strength plus MSM, 250ct. bears the COSEQUIN mark and Nutramax Laboratories Marks. Each bottle also features Nutramax's stylized "#1 Veterinarian Recommend Brand" mark (the "Cosequin #1 Mark") and Nutramax's

ingredient trademarks FCHG49 and TRH122. The marks discussed in this paragraph are hereinafter referred to as the "Cosequin Package Marks."

74.     Nutramax has generated significant sales of its COSEQUIN Maximum Strength plus MSM product nationwide, including in this judicial district.

75.     Nutramax promotes its COSEQUIN products through heavily trafficked internet websites located at the domain names <cosequin.com> and <nutramaxlabs.com>, as well as at industry conferences and in various trade publications.

76.     DASUQUIN with MSM, the specific DASUQUIN product at issue in this case, is one of the most popular joint support supplements in both the veterinary and retail small animal markets. Nutramax's DASUQUIN with MSM product is sold as both a soft chew and a chewable tablet and comes in bottles of various sizes, including a count of 150.

77.     True and correct images of a genuine bottle of Nutramax's DASUQUIN with MSM Chewable Tablets, large dogs, 150 ct., are shown below.



78.     Each bottle of DASUQUIN with MSM Chewable Tablets, large dogs, 150ct. bears the DASUQUIN mark and Nutramax Laboratories Marks. Each bottle also features Nutramax's stylized "#1 Joint Health Brand Recommend By Veterinarians" mark (the "Dasuquin #1 Mark") and Nutramax's ingredient trademarks FCHG49, TRH122, and NMX1000. The marks discussed in this paragraph are hereinafter referred to as the "Dasuquin Package Marks."

79.     Nutramax has generated significant sales of its DASUQUIN with MSM products nationwide, including in this judicial district.

80.     Nutramax promotes its DASUQUIN products through heavily trafficked internet websites located at the domain names <dasuquin.com> and <nutramaxlabs.com>, as well as at industry conferences and in various trade publications.

81.     Additionally, Nutramax, either directly or through authorized distributors, sells its COSEQUIN and DASUQUIN products through several well-known online retailers, including Amazon.com and Chewy.com.

82.     Since at least as early as 1992, Nutramax, on its own and through its predecessors in interest, has continuously and exclusively used the COSEQUIN and NUTRAMAX LABORATORIES marks in interstate commerce to identify its COSEQUIN products, including in this state.[1]

83.     Since at least as early as 2006, Nutramax, on its own and through its predecessors in interest, has continuously and exclusively used the DASUQUIN and NUTRAMAX LABORATORIES marks in interstate commerce to identify its DASUQUIN products, including in this state.

---

[1] Additional information on the NUTRAMAX LABORATORIES trademark, which is used prominently on COSEQUIN and DASUQUIN products, is included in Section I(a) above.

84.     Nutramax has used the Cosequin #1 Mark since at least as early as 2003 and the Dasuquin #1 Mark since at least as early as 2010.

85.     Nutramax has used the FCHG49 and TRH122 marks since at least as early 1999 and the NMX1000 mark since at least as early as 2006.

86.     Over the years, Nutramax has diligently protected its Cosequin Package Marks and Dasuquin Package Marks and accompanying goodwill.

87.     The Cosequin Package Marks appear prominently on all COSEQUIN products and in advertising and marketing materials for those products.

88.     The Dasuquin Package Marks appear prominently on all DASUQUIN products and in advertising and marketing materials for those products.

89.     Through substantial advertising, promotion, and use, the Cosequin Package Marks and Dasuquin Package Marks serve to identify products that originate from Nutramax alone, and the Cosequin Package Marks and Dasuquin Package Marks are assets of significant value to Nutramax as well as symbols of substantial consumer goodwill.

90.     In recognition of Nutramax's exclusive right to use the COSEQUIN mark in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for the mark, namely, U.S. Reg. Nos. 1,791,253 (COSEQUIN) and 5,662,197 (COSEQUIN). True and correct copies of the registration certificates for COSEQUIN are attached as Exhibit 3.

91.     In recognition of Nutramax's exclusive right to use the DASUQUIN mark in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for the mark, namely, U.S. Reg. Nos. 3,266,390 (DASUQUIN) and 6,872,420

(DASUQUIN). True and correct copies of the registration certificates for DASUQUIN are attached as Exhibit 4.

92.    In recognition of Nutramax's exclusive right to use the Cosequin #1 Mark and the Dasuquin #1 Mark in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. Nos. 3,869,100 (Cosequin #1 Mark) and 4,052,247 (Dasuquin #1 Mark). True and correct copies of the registration certificates for these marks are attached as Exhibit 20.

93.    In recognition of Nutramax's exclusive right to use the FCHG49, TRH122, and NMX1000 MARKS in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. Nos. 2,574,169 (FCHG49), 2,588,958 (TRH122), and 3,314,416 (NMX1000). True and correct copies of the registration certificates for these marks are attached as Exhibit 21

94.    The registrations for the Cosequin Package Marks and Dasuquin Package Marks are valid and subsisting in law, were duly and legally issued, are *prima facie* evidence of the validity of the marks registered, and constitute constructive notice of Nutramax's ownership of these marks in accordance with Sections 7(b) and 22 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1072.

95.    Apart from the '197 COSEQUIN registration and '420 DASUQUIN registration, the registrations for the Cosequin Package Marks and Dasuquin Package Marks are also incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and, pursuant to Section 33(b) of the Act (15 U.S.C. § 1115(b)), constitute conclusive evidence of Nutramax's exclusive right to use the marks registered therein in commerce in the United States.

96.     By virtue of Nutramax's exclusive use of the Cosequin Package Marks and Dasuquin Package Marks in interstate commerce, Nutramax is the exclusive owner of all right, title and interest in and to the Cosequin Package Marks and Dasuquin Package Marks and the registrations thereof.

97.     The packaging design for Nutramax's COSEQUIN Maximum Strength plus MSM 250 count product shown above at Paragraph 72 (the "Cosequin Packaging Design") is an original work of creative authorship owned by Nutramax protected by copyright law.

98.     In recognition of the copyright Nutramax owns in the Cosequin Packaging Design, the United States Copyright Office issued Nutramax Reg. No. VA 2-309-123 (the "Cosequin Copyright Registration") covering the Cosequin Packaging Design. A copy of the Cosequin Copyright Registration is attached hereto as Exhibit 5.

99.     The Cosequin Copyright Registration is valid and subsisting in law, was duly and legally issued, is *prima facie* evidence of the validity of Nutramax's copyright in the Cosequin Packaging Design, and constitutes constructive notice of Nutramax's ownership of the copyright in the Cosequin Packaging Design in accordance with 17 U.S.C. §410(c).

100.    The Cosequin Copyright Registration has an effective date of June 16, 2022—well prior to the start of Defendants' actions complained of herein.

101.    The packaging design for Nutramax's DASUQUIN with MSM chewable tablets, large dogs, 150ct, shown above at Paragraph 77 (the "Dasuquin Packaging Design") is an original work of creative authorship owned by Nutramax protected by copyright law.

102.    In recognition of the copyright Nutramax owns in the Dasuquin Packaging Design, the United States Copyright Office issued Nutramax Reg. No. VA 2-309-418 (the "Dasuquin

Copyright Registration") covering the Dasuquin Packaging Design. A copy of the Dasuquin Copyright Registration is attached hereto as Exhibit 6.

103.    The Dasuquin Copyright Registration is valid and subsisting in law, was duly and legally issued, is *prima facie* evidence of the validity of Nutramax's copyright in the Dasuquin Packaging Design, and constitutes constructive notice of Nutramax's ownership of the copyright in the Dasuquin Packaging Design in accordance with 17 U.S.C. §410(c).

104.    The Dasuquin Copyright Registration has an effective date of June 16, 2022—well prior to the start of Defendants' actions complained of herein.

### c.  DENAMARIN

105.    DENAMARIN is a supplement that combines s-adenosylmethionine (SAM-e) and Silybin to help support liver health.

106.    DENAMARIN is one of the most popular liver health supplement products in the small animal market. DENAMARIN is sold in small dog/cat, medium dog, and large dog formulations; each of these formulations comes in varying count-size bottles, including 30-count size.

107.    True and correct images of Nutramax's DENAMARIN Chewable Tablet products are shown below:



108.    Nutramax has generated significant sales of its DENAMARIN products nationwide, including in this judicial district.

109.    Nutramax promotes its DENAMARIN products through heavily trafficked internet websites located at the domain names <denamarin.com> and <nutramaxlabs.com>, as well as at industry conferences and in various trade publications.

110.    Additionally, Nutramax, either directly or through authorized distributors, sells its DENAMARIN products through several well-known online retailers, including Amazon.com and Chewy.com.

111.    Since at least as early as 2007, Nutramax, on its own and through its predecessors in interest, has continuously and exclusively used the DENAMARIN[2] and NUTRAMAX

---

[2] The PROVIABLE mark, Cosequin Package Marks, Dasuquin Package Marks, and the DENAMARIN mark are hereinafter referred to collectively as the "Nutramax Marks."

LABORATORIES marks in interstate commerce to identify its DENAMARIN products, including in this state.[3]

112.    Over the years, Nutramax has diligently protected its DENAMARIN trademark and accompanying goodwill.

113.    The DENAMARIN and NUTRAMAX LABORATORIES marks appear prominently on all DENAMARIN products and in all advertising and marketing materials for those products.

114.    Through substantial advertising, promotion, and use, the DENAMARIN mark serves to identify products that originate from Nutramax alone, and the DENAMARIN mark is an asset of significant value to Nutramax as well as a symbol of substantial consumer goodwill.

115.    In recognition of Nutramax's exclusive right to use the DENAMARIN mark in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax U.S. Reg. No. 3,288,596 for DENAMARIN. A true and correct copy of this registration certificate is attached as Exhibit 17.

116.    The DENAMARIN registration is valid and subsisting in law, was duly and legally issued, is *prima facie* evidence of the validity of the mark registered, and constitutes constructive notice of Nutramax's ownership of this mark in accordance with Sections 7(b) and 22 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1072.

117.    The DENAMARIN registration is incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and, pursuant to Section 33(b) of the Act (15 U.S.C. § 1115(b)),

---

[3] Additional information on the NUTRAMAX LABORATORIES trademark, which is used prominently on DENAMARIN products, is included in Section I(a) above.

constitutes conclusive evidence of Nutramax's exclusive right to use the mark registered therein in commerce in the United States.

118.    By virtue of Nutramax's exclusive use of the DENAMARIN mark in interstate commerce, Nutramax is the exclusive owner of all right, title and interest in and to the DENAMARIN mark and the registration thereof.

## II.    DEFENDANTS' UNLAWFUL CONDUCT

119.    Unfortunately, the nutritional supplement industry, including the animal health supplement industry, is plagued by companies that use poor quality ingredients and combinations of ingredients to lower production costs and increase profitability. In some cases, sellers resort to outright counterfeiting using unknown and untested ingredients—putting consumers, and their pets, at significant risk.

### a.    Counterfeit PROVIABLE

120.    Shortly before filing the initial Complaint in this action, Nutramax confirmed that Defendants Erwi and Hayat had engaged in the advertising, offering for sale, and/or sale of counterfeit PROVIABLE products under the seller name LIBZO MEX on at least e-commerce retailer Amazon.

121.    As part of their scheme to deceive consumers, Defendants Erwi and Hayat sold the counterfeit PROVIABLE products through Amazon's third-party seller platform. As shown on the product listing for Erwi and Hayat's counterfeit products on Amazon (Exhibit 7), despite being "[s]old by" LIBZO MEX, the counterfeit PROVIABLE product "[s]hips from" Amazon.

122.    At least two consumers intending to purchase Nutramax's products have instead unknowingly purchased 80-count blister packs of the counterfeit PROVIABLE-DC product from Defendants Erwi and Hayat via Amazon. The purchased goods were identified in the Amazon listings as genuine Nutramax products. Attached as Exhibit 8 is a true and correct copy of the

Amazon order information for one of these customers, showing the product was sold by the Amazon seller LIBZO MEX.

123.     One purchaser of the counterfeit PROVIABLE-DC submitted a complaint to Nutramax reporting that the purchaser's dog became ill. The other purchaser submitted a complaint to Nutramax about the counterfeit PROVIABLE-DC product because the powder inside the capsules had become hard and crystalized—something that does not occur in genuine PROVIABLE-DC probiotic capsules.

124.     Both purchasers sent their product packages to Nutramax. Upon careful examination of the purchased products, Nutramax determined that they were in fact counterfeit. True and correct photographs of the counterfeit products purchased from Defendants Erwi and Hayat are included in Exhibit 9.

125.     The counterfeit packaging features differences from genuine PROVIABLE packaging that confirm the product is counterfeit. By way of example, Nutramax embosses the lot number and expiration date on the bottom of each PROVIABLE-DC package; however, on the counterfeit packages, the lot number and expiration date are printed in ink on the bottom of the package. An image of the box package of a genuine PROVIABLE-DC product is shown below on the left, and the box package of a counterfeit PROVIABLE-DC product is on the right:

| Genuine PROVIABLE-DC | Counterfeit PROVIABLE-DC |
| --- | --- |



126.    Further, although Defendants Erwi and Hayat's counterfeit PROVIABLE packages are substantially similar to the Proviable Packaging Design in virtually every aspect (including text, stylization of text, color, images, shapes, and arrangement of elements on the package), the counterfeit packages are missing some of the pink "bubble" designs featured on Nutramax's genuine PROVIABLE packages. In the images below, the difference is highlighted in the red boxes:



**b.  Counterfeit COSEQUIN on Amazon**

127.    Shortly before filing the First Amended Complaint, Nutramax confirmed that Defendant HongTong had engaged in the advertising, offering for sale, and/or sale of counterfeit COSEQUIN products under the seller names "hongtongxiantanlinmaoyiyouxiangongsi" and "ZHONGwanfulin," on at least e-commerce retailer Amazon.

128.    The counterfeit product purchased from seller HongTong on Amazon was distributed by Flashship from a warehouse in Texas.

129.    Upon information and belief, consumers intending to purchase Nutramax's COSEQUIN supplements have instead unknowingly purchased counterfeit COSEQUIN Maximum Strength plus MSM supplements being sold by Defendant HongTong. The purchased goods were identified in the Amazon listings as genuine Nutramax products. Attached as Exhibit 10 is a true and correct copy of the Amazon order information for this product, showing the product was sold by the Amazon seller "hongtongxiantanlinmaoyiyouxiangongsi," which later changed its seller name to "ZHONGwanfulin." An image of the front of a genuine COSEQUIN Maximum Strength plus MSM 250 ct. bottle is shown below on the left, and the front of the counterfeit product is on the right:

| Genuine Cosequin Maximum Strength Plus MSM | Counterfeit Cosequin Maximum Strength Plus MSM |
|---|---|



130.    Upon careful examination of the purchased COSEQUIN product, Nutramax determined that it was in fact counterfeit. True and correct photographs of the counterfeit products purchased from Defendants are included in Exhibit 11. These counterfeit COSEQUIN bottles feature use of each of the Cosequin Package Marks.

131.    Although the counterfeit COSEQUIN packages are substantially similar to the Cosequin Packaging Design in virtually every aspect (including text, stylization of text, color, images, shapes, and arrangement of elements on the package), the counterfeit packaging features differences from genuine COSEQUIN Maximum Strength plus MSM packaging that confirm the product is counterfeit. By way of example, the counterfeit products have the number 800 and foreign language characters embossed on the bottom of the bottle. This number and the accompanying foreign language characters are not on genuine COSEQUIN bottles. An image of the bottom of a genuine COSEQUIN Maximum Strength plus MSM 250 ct. bottle is shown below on the left, and the bottom of the counterfeit product is on the right:

| Genuine Cosequin Maximum Strength Plus MSM | Counterfeit Cosequin Maximum Strength Plus MSM |
|---|---|



### c. Counterfeit COSEQUIN on eBay

132. Before filing the First Amended Complaint, Nutramax confirmed that Defendants Tharakneth, Kinsaypua, Pham, Lotrant, Yaddowm, KayKay, Chelsehun, Damia, Phamli, and Aliin had engaged in the advertising, offering for sale, and/or sale of counterfeit COSEQUIN products under the seller names "tharakneth-0," "kinsaypua_1," "pham_4600", "lotrant-28," "yaddowm," "kaykay1009," "chelsehun-3," "damia-901," "phamli_40," and "aliin-91" respectively, on at least e-commerce retailer eBay.

133. Shortly before filing the Second Amended Complaint, Nutramax confirmed that Defendants Gabpulga, Wenuk, Mr.Louie, Heda, Maleneth, Saphun, KgacHuy, Isuk, Dada, and Gina had engaged in the advertising, offering for sale, and/or sale of counterfeit COSEQUIN products under the seller names "gabpulga0," "wenuk04," "mr.louie86," "heda-6844,"

"maleneth15," "saphun-0," "kgac.huy_5," "isukasan0," "dada-90, and "gina-7042" respectively, on

at least e-commerce retailer eBay.

134.    The counterfeit COSEQUIN products purchased from Tharakneth, Kinsaypua,

Pham, Lotrant, Yaddowm, KayKay Chelsehun, Damia, Phamli, Aliin, Gabpulga, Wenuk,

Mr.Louie, Heda, Maleneth, and Saphun on eBay were distributed by Flashship from a warehouse

in Richardson, Texas. The Defendants used EasyPost to ship these counterfeit products.

135.    The counterfeit COSEQUIN products purchased from KgacHuy, Isuk, Dada, and

Gina on eBay were allegedly distributed by Chewy from a warehouse in Ocala, Florida. The

Defendants used Shippo to ship the counterfeit products.

136.    Additional orders of the counterfeit COSEQUIN products purchased from

Gabpulga, Wenuk, Mr.Louie, Yaddowm, and Aliin on eBay were distributed by Mr. Ho from a

location in Lebanon, Pennsylvania. The Defendants used Shippo to ship the counterfeit products.

137.    Upon information and belief, consumers intending to purchase Nutramax's

COSEQUIN supplements have instead unknowingly purchased counterfeit COSEQUIN

Maximum Strength plus MSM supplements being sold by Defendants Tharakneth, Kinsaypua,

Pham, Lotrant, Yaddowm, KayKay Chelsehun, Damia, Phamli, Aliin, Gabpulga, Wenuk,

Mr.Louie, Heda, Maleneth, KgacHuy, Saphun, Isuk, Dada, and Gina. The purchased goods were

identified in the eBay listings as genuine Nutramax products and the COSEQUIN product

advertised for sale by "kinsaypua_01," "kaykay1009," "chelsehun-3," and "damia-901" were even

labeled as a verified eBay Authentic Product. Attached as Exhibit 12 is a true and correct copy of

the eBay order information for these purchases, showing the product was sold by the eBay sellers

"tharakneth-0,"   "kinsaypua_1,"   "pham_4600,"   "lotrant-28,"   "yaddowm,"   "kaykay1009,"

"chelsehun-3," "damia-901," "phamli_40," "aliin-91," "gabpulga0," "wenuk04," "mr.louie86,"
"heda-6844," "maleneth15," "saphun-0," "kgac.huy_5, "isukasan0," "dada-90," and "gina-7042."

138.    An image of the front of a genuine COSEQUIN Maximum Strength plus MSM 250
ct. bottle is shown below on the left, and the front of an example of the counterfeit COSEQUIN
product is on the right (the products that came from Defendants Tharakneth, Kinsaypua, Pham,
Lotrant, Yaddowm, KayKay, Chelsehun, Damia, Phamli, Aliin, Gabpulga, Wenuk, Mr.Louie,
Heda, Maleneth, Saphun, KgacHuy, Isuk, Dada, and Gina, are all identical):

| Genuine Cosequin Maximum Strength Plus MSM | Counterfeit Cosequin Maximum Strength Plus MSM (from seller tharakneth-0) |
|---|---|



139.    Upon careful examination of the COSEQUIN product purchased from Defendants
Tharakneth, Kinsaypua, Pham, Lotrant, Yaddowm, KayKay, Chelsehun, Damia, Phamli, Aliin,
Gabpulga, Wenuk, Mr.Louie, Heda, Maleneth, Saphun, KgacHuy, Isuk, Dada, and Gina,
Nutramax determined that all bottles received were in fact counterfeit. True and correct

photographs of the counterfeit COSEQUIN products purchased from these Defendants are included in Exhibit 13. These counterfeit COSEQUIN bottles feature use of each of the Cosequin Package Marks.

140.    Although the counterfeit COSEQUIN packages are substantially similar to the Cosequin Packaging Design in virtually every aspect (including text, stylization of text, color, images, shapes, and arrangement of elements on the package), the counterfeit packaging features differences from genuine COSEQUIN Maximum Strength plus MSM packaging that confirm the product is counterfeit. By way of example, each of the counterfeit products have the number 800 and foreign language characters embossed on the bottom of the bottle (identical to the counterfeit product purchased from Amazon discussed above). This number and the accompanying foreign language characters are not on genuine COSEQUIN bottles. An image of the bottom of a genuine COSEQUIN Maximum Strength plus MSM 250 ct. bottle is shown below on the left, and an example of the bottom of the counterfeit product is on the right:

| Genuine Cosequin Maximum Strength Plus MSM | Counterfeit Cosequin Maximum Strength Plus MSM (from seller "pham_4600") |
|---|---|
|  |  |

### d. Counterfeit DASUQUIN on eBay

141. Before filing the First Amended Complaint, Nutramax confirmed that Defendants Tharakneth, Chelsehun, Dulanga, and Lotrant had engaged in the advertising, offering for sale, and/or sale of counterfeit DASUQUIN products under the seller names "tharakneth-0," "chelsehun-3," "dulanga_mart," and "lotrant-28" on at least e-commerce retailer eBay.

142. Shortly before filing the Second Amended Complaint, Nutramax confirmed that Defendant Chelakaka had engaged in the advertising, offering for sale, and/or sale of counterfeit DASUQUIN products under the seller name "chelakaka37" on at least e-commerce retailer eBay.

143. The counterfeit products purchased from Tharakneth, Chelsehun, Dulanga, Lotrant, and Chelakaka on eBay were all distributed by Flashship from the same warehouse in Richardson, Texas. The Defendants used EasyPost to ship the counterfeit products.

144.    Upon information and belief, consumers intending to purchase Nutramax's DASUQUIN supplements have instead unknowingly purchased counterfeit DASUQUIN with MSM supplements being sold by Defendants Tharakneth, Chelsehun, Dulanga, Lotrant, and Chelakaka. The purchased goods were identified in the eBay listings as genuine Nutramax products. Attached as Exhibit 14 is a true and correct copy of the eBay order information for this product, showing the product was sold by the eBay sellers "tharakneth-0," "chelsehun-3," "dulanga_mart," "lotrant-28," and "chelakaka37."

145.    An image of the front of a genuine DASUQUIN with MSM 150 ct. chewable tablet bottle is shown below on the left, and the front of the counterfeit DASUQUIN product is on the right (the products that came from Defendants Tharakneth, Chelsehun, Dulanga, Lotrant, and Chelakaka are all identical):

| Genuine Dasuquin with MSM | Counterfeit Dasuquin with MSM (from "tharakneth-0") |
|---|---|



146.    Upon careful examination of the DASUQUIN products purchased from eBay sellers "tharakneth-0," "chelsehun-3," "dulanga_mart," "lotrant-28," and "chelakaka37," Nutramax determined that they were in fact counterfeit. True and correct photographs of the counterfeit products purchased from Defendants are included in Exhibit 15. These counterfeit DASUQUIN bottles feature use of each of the Dasuquin Package Marks.

147.    Although the counterfeit DASUQUIN packages are substantially similar to the Dasuquin Packaging Design in virtually every aspect (including text, stylization of text, color, images, shapes, and arrangement of elements on the package), the counterfeit packaging features differences from genuine DASUQUIN with MSM packaging that confirm the product is counterfeit. By way of example, the counterfeit products have the number 800 and foreign language characters embossed on the bottom of the bottle. This number and the accompanying foreign language characters are not on genuine DASUQUIN bottles. An image of the bottom of a genuine DASUQUIN with MSM 150 ct. bottle is shown below on the left, and the bottom of the counterfeit product is on the right:



### e. Counterfeit DENAMARIN on eBay

148.    Before filing the Second Amended Complaint, Nutramax confirmed that Defendants Chelsehun, Kinsaypua, and Wenuk had engaged in the advertising, offering for sale, and/or sale of counterfeit DENAMARIN products under the seller names "chelsehun-3," "kinsaypua_01," and "wenuk04" on at least e-commerce retailer eBay. Each of these sellers sold counterfeits of each of the DENAMARIN formulations discussed at Section I.C above.

149.    The counterfeit products purchased from Chelsehun, Kinsaypua, and Wenuk on eBay were all distributed by Flashship from a warehouse in Richardson, Texas. The Defendants used EasyPost to ship the counterfeit products.

150.    Upon information and belief, consumers intending to purchase Nutramax's DENAMARIN supplements have instead unknowingly purchased counterfeit DENAMARIN supplements being sold by Defendants Chelsehun, Kinsaypua, and Wenuk. The purchased goods were identified in the eBay listings as genuine Nutramax products. Attached as Exhibit 18 is a true and correct copy of the eBay order information for this product, showing the product was sold by the eBay sellers "chelsehun-3," "kinsaypua_01," and "wenuk04."

151.    Images of the front of Nutramax's genuine DENAMARIN coated tablets bottles are shown below on the left, and photos of the front of the counterfeit DENAMARIN products are on the right (the products that came from Defendants Chelsehun, Kinsaypua, and Wenuk are all effectively identical):

| Genuine DENAMARIN | Counterfeit DENAMARIN (from "chelsehum-3") |
|---|---|
|  |  |
|  |  |

| Genuine DENAMARIN | Counterfeit DENAMARIN (from "chelsehum-3") |
|---|---|
|  | |

152.    Upon careful examination of the DENAMARIN products purchased from eBay sellers "chelsehun-3," "kinsaypua_01," and "wenuk04," Nutramax determined that they were in fact counterfeit. True and correct photographs of the counterfeit products purchased from Defendants are included in Exhibit 19.

153.    Although the counterfeit DENAMARIN packages are substantially similar to genuine DENAMARIN packages in virtually every aspect (including text, stylization of text, color, images, shapes, and arrangement of elements on the package), the counterfeit packaging features differences from genuine DENAMARIN packaging that confirm the product is counterfeit.

**f.  Đỗ Văn Tân and Duta Global Company Limited**

154.    The counterfeit products distributed by Flashship and Mr. Ho discussed above originated from Mr. Tan and Duta, both of which are based in Vietnam.

155.    During the operative period of the activities complained about herein, Mr. Tan and Flashship were parties to a contract whereby Flashship fulfilled online orders for Mr. Tan.

156.    Payments to Flashship for these fulfillment and distribution services came from both Mr. Tan and Duta.

157.    Upon information and belief, Mr. Tan conducts his business activities with the assistance of his business entity, Duta, and Mr. Tan and Duta are the manufacturer and source of the counterfeits distributed by Flashship and Mr. Ho.

158.    The counterfeit COSEQUIN, DASUQUIN, and DENAMARIN products at issue in this case were shipped from Vietnam to Flashship by Mr. Tan.

159.    Once Flashship received the counterfeit products from Mr. Tan, Flashship inspected the products and photographed them for Mr. Tan.

160.    At least one photograph taken by a Flashship employee and sent to Mr. Tan prominently displayed the words "Made in USA From Globally Sourced Ingredients" on a counterfeit COSEQUIN bottle.

161.    Photographs taken by Flashship and sent to Mr. Tan of a counterfeit COSEQUIN bottle show that the bottle had significant scratching on the front label and yellow-brown staining on the back label.

162.    Flashship does not have a policy to inspect or vet the products it fulfills for its customers and Flashship does not inquire about the origin of the products or its customers' right to sell those products.

163.    Flashship did not conduct any diligence regarding the products it packaged and shipped for Mr. Tan and Duta.

164.     Because Flashship received and fulfilled orders for products shipped from Vietnam but clearly labeled as "Made in USA", and because at least some of the products fulfilled showed clear signs of poor quality, Flashship knew or should have known the products sold by Mr. Tan and Duta for which it offered fulfillment and distribution services were not genuine and likely counterfeit.

165.     For every order for which Mr. Tan sent information and instructions to Flashship, Flashship would package the product that had been ordered, create and print a shipping label, and affix the shipping label to the packages to be picked up for shipment.

166.     The shipping labels created, printed, and affixed to the packages by Flashship included the specific product-level trademark of the product inside the package, i.e., COSEQUIN, DASUQUIN, or DENAMARIN.

167.     Defendant Mr. Ho also informed Nutramax's counsel that he was contacted by Mr. Tan, and that he agreed to fulfill, and did fulfill, online orders for Mr. Tan.

168.     Upon information and belief, Mr. Tan and Duta shipped counterfeit COSEQUIN products to Mr. Ho and Mr. Ho provided the same services provided by Flashship to Mr. Tan— namely, packaging the products, creating and printing shipping labels to affix to those packages, and shipping the products to Mr. Tan's purchasers.

169.     The counterfeit COSEQUIN products packaged and shipped by Mr. Ho featured the same "Made in USA From Globally Sourced Ingredients" badge as those fulfilled by Flashship, as well as the same scratching and dark staining on the product labels.

170.     For the same reasons as Flashship, Mr. Ho therefore knew or should have known while offering services to Mr. Tan and Duta that the COSEQUIN products he packaged and shipped were not genuine and likely counterfeit.

**g. The Harm to Nutramax and Danger to Consumers of Counterfeit Products**

171.    Counterfeit products, such as the fake PROVIABLE-DC, COSEQUIN Maximum Strength plus MSM, DASUQUIN with MSM, and DENAMARIN products sold by Defendants pose an immediate threat to the safety of consumers and their pets.

172.    Even assuming the counterfeit products were harmless, because of the poor quality of the products consumers are likely to be disappointed by the products and attribute the poor quality and performance to Nutramax.

173.    This is evidenced by the fact that two consumers contacted Nutramax after being disappointed in the counterfeit PROVIABLE-DC products. It is further evidenced by the recent negative reviews from Amazon customers, such as the following, that Defendants Erwi and Hayat have received on the LIBZO MEX seller account page for the counterfeit PROVIABLE products (see Exhibit 16):

-   "The capsules were hard as a rock. The probiotic usually is a powder that can be sprinkled on my dogs [*sic*] food. This was a hard yellow substance…."

-   "The probiotic inside the capsules was brown and formed into a solid. I will have to throw it away as it's unusable and can't be returned."

-   "I ordered proviable-dc 80 count. It arrivedin [*sic*] an unopened box. These are dated good until 4/2024. They were not powder filled. Instead they are a hard yellow lump inside the capsules. It's a factory defect…."

-   "[C]apsules are supposed to be powder but they are crystallized. Afraid to use them."

174.    Consumers, relying on the reputation of Amazon and eBay, and the reputation of the PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, and NUTRAMAX LABORATORIES brands, have no reason to suspect the health supplement products they purchased on the Amazon and eBay platforms are anything but genuine.

175.    In furtherance of the deceit, Defendants' counterfeit products are virtually exact replicas of the genuine articles, including the use of Nutramax's trademarks on the fake products to create the impression that Defendants' inferior and potentially dangerous products are authentic Nutramax products.

176.    Further, consumers are fraudulently being deprived of the bargained-for exchange—the intestinal health support and balance, joint health support, and liver health support their pets need—all to the reputational detriment of Nutramax and the PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, and NUTRAMAX LABORATORIES brands.

177.    Accordingly, the presence of counterfeit products such as these denigrate and tarnish the substantial goodwill Nutramax has labored to build in its PROVIABLE, COSEQUIN, DASUQUIN, and DENAMARIN products, its other products, and in the company itself.

178.    Nutramax has no association or affiliation of any kind with the Defendants or their online businesses, and Nutramax has never authorized the Defendants to use the Nutramax Marks, the Proviable Packaging Design, the Cosequin Packaging Design, or the Dasuquin Packaging Design, or to sell or distribute any PROVIABLE, COSEQUIN, DASUQUIN, or DENAMARIN products, or any other Nutramax product.

179.    Upon information and belief, numerous consumers have been misled by Defendants into believing that the Defendants are selling or distributing genuine PROVIABLE, COSEQUIN, DASUQUIN, or DENAMARIN products, when in fact the goods have now been confirmed as sophisticated, and unfortunately convincing, counterfeits.

180.    The fact that Defendants' counterfeit products are such slavish imitations of Nutramax's genuine PROVIABLE, COSEQUIN, DASUQUIN and DENAMARIN products, and are offered to consumers via Amazon and eBay as being genuine Nutramax products, shows that

Defendants' actions have been undertaken with malice, and constitute fraud upon consumers and upon Nutramax.

181.    As of July 28, 2023, Defendants Erwi and Hayat's LIBZO MEX Amazon seller account no longer had any products listed for sale. As of November 30, 2023, HongTong's Amazon seller account was no longer selling Nutramax products. Upon information and belief, Mr. Ho continues to actively distribute counterfeit COSEQUIN and DASUQUIN product, and although the eBay accounts of Defendants Tharakneth, Kinsaypua, Pham, Chelsehun, Dulanga, Lotrant, Yaddowm, Damia, Phamli, Aliin, Gabpulga, Wenuk, Chelakaka, Mr.Louie, Heda, Maleneth, KgacHuy, Isuk, Dada, KayKay, and Saphun are not presently active, they could be reactivated or opened under alternate usernames. As long as Defendants can continue to promote, sell, and distribute these counterfeit products, Nutramax will lose its ability to control the use of its valuable marks. There is remaining stock of counterfeit PROVIABLE-DC products in one or more of Amazon's fulfillment centers and, upon information and belief, remaining stock of counterfeit COSEQUIN, DASUQUIN and DENAMARIN products in the possession of HongTong, Tharakneth, Kinsaypua, Pham, Chelsehun, Dulanga, Lotrant, Yaddowm, KayKay, Damia, Phamli, Aliin, Gabpulga, Wenuk, Chelakaka, Mr.Louie, Heda, Maleneth, KgacHuy, Saphun, Isuk, Dada, and Gina.

182.    Nutramax unfortunately has experienced counterfeiting of its products in the past, and sales of such products on e-commerce platforms such as Amazon and eBay. Upon information and belief, the sellers of such products, even once their initial seller account is shut down, can (and are likely to) easily create additional seller accounts through the use of false contact information and alternate, difficult-to-trace financial information. Nutramax is currently unaware of the true identities and locations of many of the Defendants.

183.    For example, in *Nutramax Labs., Inc. v. Pegato Big Save LLC*, Case No. 1:18-cv-03506-JPB (N.D. Ga. 2018), Nutramax similarly combatted Amazon sellers offering counterfeit PROVIABLE products, along with counterfeits of Nutramax's COSEQUIN and DASUQUIN products.

184.    During the course of discovery in that matter, Nutramax learned that, for nearly every Amazon seller account involved, the defendants had provided Amazon with false names and contact information (save for email addresses).

185.    Nutramax also learned that many of the defendants had provided checking account numbers to Amazon that, although they appeared to be tied to U.S. banks, were in fact tied to accounts at a third-party digital payment platform.

186.    Further investigation revealed that many of the defendants had *also* provided false name and contact information (save for email addresses) to the third-party payment platform, and that in many instances the third-party payment platform had been directed to send funds to accounts belonging to the defendants at banks based in China.

187.    Nutramax's experience with these types of counterfeiting cases highlights the need for swift, *ex parte* injunctive relief before the Defendants receive notice of this action. Otherwise, the Defendants could quickly open different seller accounts using false information and could transfer funds to difficult-to-trace accounts and realize their ill-gotten gains.

## COUNT I
### Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)
### (Against all Defendants)

188.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

189.    The Nutramax Marks serve to identify to the public goods that are offered by Nutramax alone, and the marks serve as symbols of the substantial goodwill Nutramax has built in its marks.

190.    Defendants are using counterfeit copies of Nutramax's federally registered Nutramax Marks in interstate commerce without Nutramax's authorization or consent in connection with the sale, offering for sale, or distribution of counterfeit goods in a manner that is likely to cause confusion, mistake, or deception as to whether the goods originate from Nutramax and/or as to whether the Defendants or their goods are sponsored or endorsed by, or associated or affiliated with, Nutramax.

191.    Defendants clearly have knowledge of Nutramax and their trademark rights and are intentionally using counterfeits of the Nutramax Marks in an effort to pass themselves off as being Nutramax or as one of Nutramax's authorized retailers or distributors, which they are not.

192.    Defendants' conduct constitutes knowing and willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

193.    Nutramax has no adequate remedy at law, and if Defendants' actions are not enjoined, Nutramax will continue to suffer irreparable harm to its reputation and the goodwill of its valuable Nutramax Marks.

194.    Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

195.    As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction; and to recovery of (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to

an amount three times the amount proven as actual damages); (2) the Defendants' profits; (3) the costs of the action; and (4) reasonable attorneys' fees. As an alternative to (1) and (2), Nutramax may elect to recover statutory damages for willful counterfeiting in an amount not to exceed $2,000,000 per counterfeit mark per type of goods sold.

## COUNT II
### False Designations of Origin & False Descriptions (15 U.S.C. § 1125(a))
### (Against all Defendants)

196.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

197.    Defendants are knowingly using counterfeit imitations of the Nutramax Marks without authorization or consent from Nutramax in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of counterfeit goods in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated or affiliated with, or sponsored or endorsed by Nutramax.

198.    Defendants' conduct constitutes false designations of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

199.    As a direct and proximate result of Defendants' conduct, Nutramax has suffered actual and irreparable harm to its reputation and goodwill for which no adequate remedy exists at law. Defendants' conduct will continue to cause such injury unless and until enjoined by this Court.

200.    Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

201.    As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is

entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) the Defendants' profits; (3) the costs of the action; and (4) because this is an exceptional case, reasonable attorneys' fees.

<u>**COUNT III**</u>
**Texas Common Law Trademark Infringement**
**(Against all Defendants)**

202.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

203.    By virtue of its prior adoption and use in interstate commerce of the Nutramax Marks in this judicial district and elsewhere, Nutramax has acquired, established, and owns common law trademark rights in those marks, which serve to identify to the public pet health supplements that are offered by Nutramax, and the goods offered in connection with those marks are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with Nutramax.

204.    Defendants are knowingly using counterfeit imitations of the Nutramax Marks without authorization or consent from Nutramax in interstate commerce in connection with the sale, offering for sale, distribution, and advertising of counterfeit goods in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated or affiliated with, or sponsored or endorsed by Nutramax.

205.    Defendants' conduct constitutes trademark infringement in violation of the common law of the state of Texas.

206.    As a direct and proximate result of Defendants' conduct, Nutramax has suffered actual and irreparable harm to its reputation and goodwill for which no adequate remedy exists at law. Defendants' conduct will continue to cause such injury unless and until enjoined by this Court.

207.    Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

208.    As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is entitled to recover (1) Nutramax's actual damages; (2) the Defendants' profits; (3) exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003; (4) the costs of the action; and (5) reasonable attorneys' fees.

**COUNT IV**
**Texas Common Law Unfair Competition**
**(Against all Defendants)**

209.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

210.    By virtue of its prior adoption and use in interstate commerce of the Nutramax Marks in this judicial district and elsewhere, Nutramax has acquired, established, and owns common law trademark rights in those marks, which serve to identify to the public pet health supplements that are offered by Nutramax, and the goods offered in connection with those marks are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with Nutramax.

211.    Defendants are knowingly using counterfeit imitations of the Nutramax Marks without authorization or consent from Nutramax in interstate commerce in connection with the

sale, offering for sale, distribution, and advertising of counterfeit goods in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendants are associated or affiliated with, or sponsored or endorsed by Nutramax.

212.    Defendants' conduct constitutes unfair competition in violation of the common law of the state of Texas.

213.    As a direct and proximate result of Defendants' conduct, Nutramax has suffered actual and irreparable harm to its reputation and goodwill for which no adequate remedy exists at law. Defendants' conduct will continue to cause such injury unless and until enjoined by this Court.

214.    Defendants' conduct has further enabled them to earn profits to which they are not in law, equity or good conscience entitled, and has unjustly enriched Defendants, all to Defendants' profit and Nutramax's damage.

215.    As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is entitled to recover (1) Nutramax's actual damages; (2) the Defendants' profits; (3) exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003; (4) the costs of the action; and (5) reasonable attorneys' fees.

## **COUNT V**
### **Copyright Infringement (17 U.S.C. § 501)**
### **(Against all Defendants)**

216.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

217.    The Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design are original works of creative authorship, and therefore protected by copyright law.

218.    Nutramax is the owner of all right, title, and interest to the copyright in the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design as is reflected in the Proviable Copyright Registration, the Cosequin Copyright Registration, and the Dasuquin Copyright Registration.

219.    The design of the packaging for the counterfeit PROVIABLE-DC products sold by Defendants Erwi and Hayat is a flagrant copy of the Proviable Packaging Design.

220.    The design of the packaging for the counterfeit COSEQUIN Maximum Strength plus MSM 250 ct. sold by Defendants HongTong, Tharakneth, Kinsaypua, Pham, Chelsehun, Dulanga, Lotrant, Yaddowm, KayKay, Damia, Phamli, Aliin, Gabpulga, Wenuk, Mr.Louie, Heda, Maleneth, and Saphun (all of which are distributed by Defendant Flashship and/or Mr. Ho), and KgacHuy, Isuk, Dada, and Gina (which were allegedly distributed by Chewy) is a flagrant copy of the Cosequin Packaging Design.

221.    The design of the packaging for the counterfeit DASUQUIN with MSM, 150 ct. sold by Defendants Tharakneth, Chelsehun, Dulanga, Lotrant, and Chelakaka (all of which are distributed by Defendant Flashship) is a flagrant copy of the Dasuquin Packaging Design.

222.    The fact that Defendants are selling counterfeit products using such flagrant copies of the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design indicates that Defendants had access to, and were highly familiar with, the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design.

223.    Without Nutramax's knowledge, authorization, or consent, Defendants copied the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design for Defendants' counterfeit PROVIABLE-DC packaging, COSEQUIN Maximum Strength plus MSM packaging and DASUQUIN with MSM packaging, which are substantially similar to the

Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design respectively, in virtually every possible way.

224.    Defendants' unauthorized copying and distribution of the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design constitutes copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501.

225.    Defendants' infringement of the Proviable Packaging Design, Cosequin Packaging Design, Dasuquin Packaging Design, was done knowingly, willfully, deliberately, and with reckless disregard for Nutramax's rights.

226.    As a direct and proximate result of Defendants' copyright infringement, Nutramax has been damaged and Defendants have been unjustly enriched.

227.    As a direct and proximate result of Defendants' copyright infringement, Nutramax has suffered actual and irreparable injury for which no adequate remedy exists at law, and will continue to suffer irreparable harm unless this Court enters injunctive relief.

228.    Nutramax is entitled to a temporary, preliminary, and permanent injunction against Defendants prohibiting them from distributing, copying, reproducing, duplicating, revising, altering or otherwise using the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design, and any materials or information related thereto.

229.    Nutramax is entitled, pursuant to 17 U.S.C. § 503, to an order for the impoundment of Defendant's counterfeit PROVIABLE-DC, COSEQUIN Maximum Strength plus MSM, and DASUQUIN with MSM packages.

230.    Nutramax is further entitled to (1) its actual damages and any of Defendants' profits not taken into account in computing those damages; (2) the costs of the action; and (3) reasonable attorneys' fees. As an alternative to (1), Nutramax may elect to receive statutory damages in an

amount set by the Court of up to $150,000 for the willful infringement of the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design.

## <u>COUNT VI</u>
**Contributory Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)**
**(Against Flashship and Mr. Ho)**

231.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

232.    To the extent that Flashship and Mr. Ho are found not to be directly responsible for the counterfeiting activity complained of herein, they knew or should have known that the products they handled were counterfeit and provided material support for the distribution of those products—namely, packaging, labeling, and shipping the counterfeit products to end users on behalf of Mr. Tan and Duta.

233.    Flashship and Mr. Ho are therefore (if not directly liable) contributorily liable for the counterfeiting activity complained of herein under 15 U.S.C. § 1114.

234.    As a result of the intentional, willful, and wanton actions of Flashship and Mr. Ho as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction; and to recovery of (1) an amount equivalent to three times Nutramax's actual damages or Flashship's and Mr. Ho's profits, whichever is greater; (2) the costs of the action; and (3) reasonable attorneys' fees. As an alternative to (1), Nutramax may elect to recover statutory damages for willful counterfeiting in an amount not to exceed $2,000,000 per counterfeit mark per type of goods sold.

## COUNT VII
### Contributory False Designations of Origin & False Descriptions (15 U.S.C. § 1125(a))
### (Against Flashship and Mr. Ho)

235.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

236.    To the extent that Flashship and Mr. Ho are found not to be directly responsible for the false designations of origin and unfair competition complained of herein, they knew or should have known that the products they handled were counterfeit and provided material support for the distribution of those products—namely, packaging, labeling, and shipping the counterfeit products to end users on behalf of Mr. Tan and Duta.

237.    Flashship and Mr. Ho are therefore (if not directly liable) contributorily liable for the activity complained of herein under 15 U.S.C. § 1125(a).

238.    As a result of the intentional, willful, and wanton actions of the Defendants as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction, and is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2) the Flashship's and Mr. Ho's profits; (3) the costs of the action; and (4) because this is an exceptional case, reasonable attorneys' fees.

## COUNT VIII
### Contributory Texas Common Law Trademark Infringement
### (Against Flashship and Mr. Ho)

239.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

240.    To the extent that Flashship and Mr. Ho are found not to be directly responsible for the common law trademark infringement complained of herein, they knew or should have known

that the products they handled were counterfeit and provided material support for the distribution

of those products—namely, packaging, labeling, and shipping the counterfeit products to end users

on behalf of Mr. Tan and Duta.

241.    Flashship and Mr. Ho are therefore (if not directly liable) contributorily liable for

the trademark infringement complained of herein under the common law of the State of Texas.

242.    As a result of the intentional, willful, and wanton actions of Flashship and Mr. Ho

as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction,

and is entitled to recover (1) Nutramax's actual damages; (2) the Flashship's and Mr. Ho' profits;

(3) exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003; (4) the costs of the

action; and (5) reasonable attorneys' fees

**COUNT IX**
**Contributory Texas Common Law Unfair Competition**
**(Against Flashship and Mr. Ho)**

243.    Nutramax incorporates by reference the allegations set forth in the preceding

paragraphs of the Complaint as if fully repeated and restated herein.

244.    To the extent that Flashship and Mr. Ho are found not to be directly responsible for

the common law unfair competition complained of herein, they knew or should have known that

the products they handled were counterfeit and provided material support for the distribution of

those products—namely, packaging, labeling, and shipping the counterfeit products to end users

on behalf of Mr. Tan and Duta.

245.    Flashship and Mr. Ho are therefore (if not directly liable) contributorily liable for

the unfair competition complained of herein under the common law of the State of Texas.

246.    As a result of the intentional, willful, and wanton actions of Flashship and Mr. Ho

as set forth above, Nutramax is entitled to a temporary, preliminary, and permanent injunction,

and is entitled to recover (1) Nutramax's actual damages; (2) Flashship's and Mr. Ho's profits; (3) exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code § 41.003; (4) the costs of the action; and (5) reasonable attorneys' fees

### COUNT X
### Contributory Copyright Infringement (17 U.S.C. § 501)
### (Against Flashship and Mr. Ho)

247.    Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

248.    To the extent that Flashship and Mr. Ho are found not to be directly responsible for the copyright infringement complained of herein, they knew or should have known that the products they handled were counterfeit and provided material support for the distribution of those products—namely, packaging, labeling, and shipping the counterfeit products to end users on behalf of Mr. Tan and Duta.

249.    Flashship and Mr. Ho are therefore (if not directly liable) contributorily liable for the federal copyright infringement complained of herein.

250.    Nutramax is entitled, pursuant to 17 U.S.C. § 503, to an order for the impoundment of any products being labels that infringe Nutramax's registered copyrights.

251.    Nutramax is further entitled to (1) its actual damages and any of Flashship's and Mr. Ho's profits not taken into account in computing those damages; (2) the costs of the action; and (3) reasonable attorneys' fees. As an alternative to (1), Nutramax may elect to receive statutory damages in an amount set by the Court of up to $150,000 per work for willful infringement.

### JURY TRIAL

Nutramax hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of Defendants' unlawful conduct as alleged in Counts I through V of this Complaint, Nutramax respectfully prays that:

1.      The Court enter judgment that the Nutramax Marks and the copyrights in the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design are valid and enforceable; that Nutramax owns the marks and copyrights; that Defendants have infringed the marks and engaged in the sale of counterfeit products in violation of 15 U.S.C. § 1114; that Defendants have used false designations of origin and engaged in unfair competition in their advertising, promotion and sale of counterfeit products in violation of 15 U.S.C. § 1125(a); that Defendants have infringed the marks in violation of Texas common law; that Defendants have engaged in unfair competition in violation of Texas common law; and that the Defendants have infringed the copyright in the Packaging Design in violation of 17 U.S.C. § 501;

2.      To the extent Flashship and Mr. Ho are not found directly liable for the claims in Paragraph 1 above, the Court enter judgment declaring that Flashship and Mr. Ho are contributorily liable for the activity complaint of herein under 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), 17 U.S.C. § 501, and the common law of the State of Texas.

3.      The Defendants, their affiliates, officers, agents, servants, employees, attorneys, representatives, and all persons acting for, with, by, through, under, or in active concert with them, be preliminarily and permanently enjoined and restrained from:

(a)      using the Nutramax Marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, or NUTRAMAX LABORATORIES

product, or is not authorized by Nutramax to be sold in connection with the Nutramax Marks;

(b)    passing off, inducing, or enabling others to sell or pass off any product as a genuine PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, or NUTRAMAX LABORATORIES product or any other product produced by Nutramax that is not Nutramax's product or not produced under the authorization, control, or supervision of Nutramax and approved by Nutramax for sale in connection with the Nutramax Marks;

(c)    shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Nutramax, nor authorized by Nutramax to be sold or offered for sale, and which bear the Nutramax Marks or any reproductions, counterfeit copies, or colorable imitations thereof;

(d)    reproducing, creating derivative works from, distributing, or displaying the Proviable Packaging Design, Cosequin Packaging Design, or Dasuquin Packaging Design in any manner; and

(e)    otherwise competing unfairly with Nutramax in any manner;

4.    The Court enter an Order that, upon Nutramax's request, Defendants and those in privity with Defendants and those with notice of the injunction, including any online retailers (including Amazon and eBay), social media platforms, internet search engines, and email service providers for the Defendants, shall:

(a)    disable and cease providing services for any accounts through which Defendants engage in the advertising, promotion, or sale of counterfeit PROVIABLE, COSEQUIN,

DASUQUIN, DENAMARIN, or NUTRAMAX LABORATORIES products using any of the Nutramax Marks;

(b) disable and cease displaying any advertisements used by or associated with Defendants in connection with the advertising, promotion or sale of counterfeit PROVIABLE, COSEQUIN, DASUQUIN, DENAMARIN, or NUTRAMAX LABORATORIES products using the Nutramax Marks;

(c) disable any financial accounts they control associated with the Defendants and deposit any funds in the accounts into the registry of the Court; and

(d) sequester and quarantine any counterfeit products and, at Nutramax's request, either deliver those products to Nutramax or certify their destruction;

5.    Any PayPal, banking, or other financial accounts owned or used by any of the Defendants be disabled and any funds in the accounts deposited into the registry of the Court;

6.    The Defendants be ordered to pay to Nutramax an amount equivalent to three times Nutramax's actual damages or Defendants' profits (whichever is greater) stemming from use of the Nutramax Marks pursuant to 15 U.S.C. § 1117(b); or, in the alternative, the Defendants be ordered to pay Nutramax statutory damages in the amount of $2,000,000 per Nutramax Mark used by the Defendant pursuant to 15 U.S.C. § 1117(c)(2);

7.    The Defendants be ordered to pay Nutramax an amount equivalent to Nutramax's actual damages and Defendants' profits stemming from Defendants' copying of the Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design; or, in the alternative, the Defendants be ordered to pay Nutramax statutory damages in the amount of $150,000 for willful infringement of the federally registered Proviable Packaging Design, Cosequin Packaging Design, and Dasuquin Packaging Design pursuant to 17 U.S.C. § 504;

8.     The Defendants be ordered to pay Nutramax exemplary damages on Nutramax's common law trademark infringement and unfair competition claims pursuant to Tex. Civ. Prac. & Rem. Code § 41.003;

9.     The Defendants be ordered to pay Nutramax its costs and reasonable attorneys' fees incurred in connection with its copyright claim pursuant to 17 U.S.C. § 505;

10.     This case be deemed an exceptional case and Nutramax be awarded recovery from Defendants of its costs and reasonable attorneys' fees incurred in connection with its Lanham Act claims pursuant to 15 U.S.C. § 1117;

11.     Nutramax be granted such other, different, and additional relief as the Court deems just and proper;

12.     The Defendants, within fourteen (14) days after service of judgment upon them, be ordered to file with the Court and serve upon Nutramax a written report under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the judgment.

Respectfully submitted, this 28th day of June, 2024.

By:  */s/ Uly S. Gunn* _____
Jason D. Rosenberg
*jason.rosenberg@alston.com*
Georgia Bar No. 510855 (*pro hac vice*)
Uly S. Gunn
*sam.gunn@alston.com*
Georgia Bar No. 261871 (*pro hac vice*)
Mary Grace Gallagher
*marygrace.gallagher@alston.com*
Georgia Bar No. 121954 (*pro hac vice*)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000

Brady Cox
brady.cox@alston.com
Texas Bar No. 24074084
ALSTON & BIRD LLP
2200 Ross Avenue
Suite 2300
Dallas, Texas 75201
Tel: (214) 922-3400
Fax: (214) 922-3899

*Attorneys for Plaintiffs Nutramax*
*Laboratories, Inc. and Nutramax*
*Laboratories Veterinary Sciences, Inc.*