**PUBLIC VERSION**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC., et al.,<br><br>    Plaintiff,<br><br>  v.<br><br>ERWI LLC, et al.,<br><br>    Defendants. | Civil Action No. 1:23-cv-00897-ADA<br><br>**JURY TRIAL DEMANDED** |

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Veterinary Sciences, Inc. (collectively, "Nutramax"), by and through their undersigned counsel, file this Motion to Compel the production of documents from Defendant Flashship Logistics, LLC ("Flashship") (the "Motion").

## I.    INTRODUCTION

Nutramax has once again been forced to seek intervention from this Court because Flashship and its principal, Eric Truong ("Truong"), have failed to fulfill their discovery obligations. (*See* Dkt. No. 96.) The present motion is necessary because Flashship has refused to produce documents regarding Flashship's print-on-demand business. These documents are directly relevant to Nutramax's case—particularly the calculation of statutory damages—and Flashship should be ordered to produce them. In addition to the current motion, Nutramax is separately pursuing sanctions against Flashship and Truong for intentional spoliation of directly relevant communications. (*See* Dkt. No. 131.)

1

**PUBLIC VERSION**

## II.    BACKGROUND

### A.  Flashship's Fulfillment and Print-On-Demand Services

This case involves counterfeits of Nutramax's pet health supplement products that were sold to US consumers and distributed by Flashship. The sources of the counterfeits, Defendants Dỗ Văn Tân ("Tân") and Duta Global Company Limited ("Duta"), are based in Vietnam. For their counterfeit operation to succeed, Tân and Duta conspired with Defendants Flashship and Truong to flood the US market with counterfeit products. Flashship and Truong would receive and store the counterfeit products in their Texas warehouse and distribute those products to unsuspecting consumers. Flashship had no policies in place to determine if the products it stored and shipped out to US consumers were counterfeit, even when those products were ingestible supplements— according to Flashship, "[w]e just, you know, ship out whatever." (Rule 30(b)(6) Deposition of Flashship Logistics, LLC ("Flashship Dep."), excerpts of which are attached to the Declaration of Uly S. Gunn ("Gunn Decl.") as Ex. 1, at 120:22-23.)

But Flashship does not just distribute counterfeit products[1]—it also offers print-on-demand services whereby Flashship takes orders from customers, prints those customers' designs on t-shirts, and ships them out. (*See* Deposition of Flashship CEO Kevin Nguyen ("K. Nguyen Dep."), excerpts of which are attached to the Gunn Decl. as Ex. 2, at 38:1-3.) The fulfillment and print-on-demand services are both offered directly by Flashship—there is no separate affiliate or subsidiary company that oversees either of these services. (*See id.* at 168:6-169:9.) At least some Flashship personnel (e.g., Eric Truong and Do Nguyen) work on both portions of Flashship's

---

[1] According to Flashship, it ceased offering fulfillment services at some point in 2024 (at least in part due to the present lawsuit). (*See* Flashship Dep. at 78:24-79:19.) But from at least August of 2023 until Flashship ceased offering fulfillment services, the company was offering both services. (*Id.* at 96:25-97:7.)

**PUBLIC VERSION**

business. (*See* Flashship Dep. at 13:16-14:2; K. Nguyen Dep. at 15:11-15:25; FLASH_00313 (attached to the Gunn Decl. as Ex. 3); FLASH_00600 (attached to the Gunn Decl. as Ex. 4).) Further, Flashship's print-on-demand and fulfillment services were formerly advertised and promoted via the same website at <flashship.net> listing the same US address for both services. (*See* NUTRAMAX001092-NUTRAMAX001094, attached to the Gunn Decl. as Ex. 5.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ (*See* FLASH_00588-FLASH_00592, attached to the Gunn Decl. as Ex. 6.) Flashship has received at least one cease and desist letter alleging intellectual property infringement related to its print-on-demand services—a letter that has not yet been produced to Nutramax. (*See* K. Nguyen Dep. at 100:12-101:25.)

Incredibly, even after the filing of this lawsuit, Flashship continued to partner with Tan and Duta, including offering print-on-demand services to them into 2025. (*See id.* at 61:20-61:24; *see also* February 20, 2025 correspondence from E. Wood, attached to the Gunn Decl. as Ex. 7, at p. 2.)

## B.  The Disputed Discovery Requests

On July 11, 2024, Nutramax served its first set of requests for production on Flashship (the "First RFPs"). (Gunn Decl., ¶ 12, Ex. 8.) The First RFPs requested, among other documents, the following:

---

[2] Flashship has produced a limited profit and loss statement for 2024 that only reflects revenue and certain expenses related to its fulfillment services. Obtaining a full profit and loss statement for 2024 from Flashship is one of the aims of this present motion to compel.

- **Request for Production No. 12 ("RFP 12"):** "All documents concerning claims, demands, or actual or threatened legal action concerning Your services and the products for which You have provided importation, storage, shipment, distribution, processing, selling, or fulfillment services." (*Id.*)

- **Request for Production No. 17 ("RFP 17"):** "Documents sufficient to show Your gross and net revenue and gross and net profits from January 1, 2023 to the present on a month-by-month basis." (*Id.*)

- **Request for Production No. 22 ("RFP 22"):** "Documents sufficient to show Your policies concerning investigating, vetting, or validating the source, quality, or authenticity of the products that You store, ship, distribute, process, sell, fulfill orders for, or in any other manner handle on behalf of Your customers." (*Id.*)

In its August 12, 2024, response to the First RFPs (the "First Response"), Flashship did not object to RFP 12 or RFP 22. (*See id.*, ¶ 13, Ex. 9.) Flashship lodged limited objections to RFP 17 but also produced its 2023 balance sheet profit and loss statement for all of its services in 2023. (*See id*, ¶ 10, Ex. 6.)

On August 27, 2025, Nutramax served its third set of requests for production on Flashship (the "Third RFPs"). (Gunn Decl., ¶ 14, Ex. 10.) The Third RFPs requested, among other documents, the following (collectively, the "Challenged RFPs"):

- **Request for Production No. 47 ("RFP 47"):** "All Documents concerning claims, demands, or actual or threatened legal action concerning Your print-on-demand services." (*Id.*)

- **Request for Production No. 48 ("RFP 48"):** "Documents sufficient to show Your gross and net revenue and gross and net profits for the period of January 1, 2024 to the present." (*Id.*)

- **Request for Production No. 49 ("RFP 49"):** "Documents sufficient to show Your past and present policies and procedures concerning intellectual property infringement related to Your print-on-demand services, including (but not limited to) any policies and procedures to ensure print-on-demand items You print and distribute for customers do not infringe the intellectual property rights of third parties." (*Id.*)

These RFPs are simply more targeted versions of RFPs 12, 17, and 22 from the First RFPs to make clear that the requests are intended to cover Flashship's print-on-demand services. For example, any documents responsive to RFPs 47 and 49 would also be responsive to RFPs 12 and

4

**PUBLIC VERSION**

22 from the First RFPs. RFP 48 was simply a reiteration of RFP 17 seeking the 2024 financial information that Flashship had yet to produce.

On October 17, 2025, Flashship provided the following responses to the Challenged RFPs, refusing to produce any documents related to Flashship's print-on-demand services. (*Id.* at ¶ 15, Ex. 11.)

- **Response to RFP 47:** "Flashship objects to this request because it seeks information that is confidential or invades the personal, private or constitutional rights of Flashship. Flashship objects to this request because it is not reasonably limited in time or scope, unduly burdensome, harassing, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence but merely constitutes an impermissible fishing expedition. Print-on-demand services are not relevant to this lawsuit, nor have Plaintiffs made any claim against Flashship that they have suffered any harm or damage as a result of Flashship's providing of print-on-demand services." (*Id.*)

- **Response to RFP 48:** "Flashship objects to this request because it seeks information that is confidential or invades the personal, private or constitutional rights of Flashship. Flashship objects to this request because it is not reasonably limited in time or scope, unduly burdensome, harassing, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence but merely constitutes an impermissible fishing expedition. Print-on-demand services are not relevant to this lawsuit, nor have Plaintiffs made any claim against Flashship that they have suffered any harm or damage as a result of Flashship's providing of print-on-demand services. Subject to the foregoing objections, responsive documents in Flashship's possession, custody, or control regarding fulfillment services are being produced in conjunction with these responses." (*Id.*)

- **Response to RFP 49:** "Flashship objects to this request because it seeks information that is confidential or invades the personal, private or constitutional rights of Flashship. Flashship objects to this request because it is not reasonably limited in time or scope, unduly burdensome, harassing, overly broad, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence but merely constitutes an impermissible fishing expedition. Print-on-demand services are not relevant to this lawsuit, nor have Plaintiffs made any claim against Flashship that they have suffered any harm or damage as a result of Flashship's providing of print-on-demand services." (*Id.*)

In response to RFP 48, ███████████████████████████████████████ ████████████████████████████████████████████████████. (*See id.* ¶ 16, Ex. 12.) It produced no documents responsive to RFPs 47 and 49. (*Id.* ¶ 17.)

**PUBLIC VERSION**

On November 13, 2025, Nutramax sent Flashship a letter requesting a meeting to confer regarding Flashship's responses to the Challenged RFPs. (*Id.*, ¶ 18, Ex. 13.)  On November 24, 2025, the Parties met and conferred but were unable to resolve their differences; Flashship stated it would produce no documents responsive to RFPs 47 and 49 and no further documents in response to RFP 48. (*Id.*, ¶ 19.)

### III.    LEGAL STANDARD

The scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Specifically, Rule 26(b)(1) states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "A discovery request is relevant when the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence." *Deugoue v. Trans Union LLC*, No. 1:23-cv-00753-RP, 2024 U.S. Dist. LEXIS 208211, *5 (W.D. Tex. Nov. 13, 2024) (quoting *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) (internal quotation and citation omitted)).

"[A] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). If a motion to compel is granted or the discovery sought is provided after the filing of the motion to compel, the court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that

6

conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A).

## IV.    ARGUMENT

Flashship cannot lawfully withhold the plainly responsive and relevant documents and information sought. Nutramax is seeking statutory damages for Flashship's willful counterfeiting and copyright infringement. Among the factors courts consider in setting statutory damages awards are "expenses saved and profits reaped . . . whether the defendant's conduct was innocent or willful . . . [and] the potential for discouraging the defendants." *GS Holistic, LLC v. Sublime Smoke & Vape LLC*, No. 4:23-CV-255-SDJ-AGD, 2024 U.S. Dist. LEXIS 172219, *17-18 (E.D. Tex. Sept. 3, 2024). Here, to meaningfully set a statutory damages award the Court will need to review the very documents sought through the Challenged RFPs. RFP 48 directly requests the type of company-wide financial information considered when determining a statutory award that has the desired impact of discouraging further infringement. RFP's 47 and 49 both seek documents to determine the infringer's state of mind (in particular, its respect for third-party intellectual property rights) in committing the infringement, and to what extent its continued business activity counsels for stronger discouragement. Whether Flashship's unauthorized use of third-party intellectual property regularly draws the ire of third-parties, and what policies or procedures Flashship has in place to prevent or mitigate those risks, are directly relevant to the Court's calculation of statutory damages.

Flashship asserts that information regarding its "print-on-demand" services has no bearing on this matter since the counterfeiting at the center of this lawsuit took place on the fulfillment side of Flashship's business. This position ignores reality. This is not a situation where a parent company has separate subsidiaries, with separate workforces and resources, to operate separate

7

lines of business. The Flashship that conspired to willfully distribute counterfeit products for Do Van Tan and Duta is the same Flashship that is running a print-on-demand business—a business that itself has already run afoul of intellectual property protections at least once. Flashship's CEO, Kevin Nguyen, confirmed that Flashship's print-on-demand business is operated by Flashship (as opposed to a separate legal entity). ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████. Flashship should not now be entitled to draw an arbitrary distinction to conceal its revenue, assets, and level of fault in an attempt to lower the potential statutory damages award. Perhaps no fact illustrates the nexus between Flashship's fulfillment and print-on-demand business than the fact that Tân, the very Flashship customer from which the counterfeit products at issue originated, has remained as one of Flashship's print-on-demand customers.

In any event, because Flashship lodged no objections to RFPs 12 and 22, and because RFPs 47 and 49 simply seek a subset of the documents sought by RFPs 12 and 22, Flashship has long since waived any objections it could have lodged to RFPs 47 and 49. *See Kaden v. Schleese Saddlery Serv.*, No. EP-17-CV-00053-KC, 2017 U.S. Dist. LEXIS 218975, *7 ("[I]f a party fails to respond in writing within thirty days of being served with a request for production of documents, it is appropriate for the court to find that the party's objections are waived, unless the court finds good cause and excuses that failure. District courts in the Fifth Circuit consistently follow this principle." (internal citations omitted)). And although Flashship did originally lodge some objections to RFP 17, after meeting and conferring regarding that RFP, Flashship produced a purportedly complete balance sheet and profit and loss statement for 2023. There is no reason it should not have to do the same for 2024; Flashship simply does not want Nutramax or this Court

to know how successful its business has been, perhaps hoping that it can minimize any potential statutory damages award for its wrongful and dangerous conduct.

For the foregoing reasons, this Court should order Flashship to produce documents responsive to the Challenged RFPs.

## V.     <u>CONCLUSION</u>

Flashship has impermissibly withheld critical evidence in this case. This Court should enter an order compelling the requested discovery and granting Nutramax its reasonable attorneys' fees and costs incurred in connection with this motion pursuant to FED. R. CIV. P. 37(a)(5)(A).

**PUBLIC VERSION**

Respectfully submitted, this 23rd day of December 2025.

/s/ Uly S. Gunn
Jason D. Rosenberg (admitted PHV)
*jason.rosenberg@alston.com*
Georgia Bar No. 510855
Uly S. Gunn (admitted PHV)
*sam.gunn@alston.com*
Georgia Bar No. 261871
Mary Grace Gallagher (admitted PHV)
*marygrace.gallagher@alston.com*
Georgia Bar No. 121954
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone: 404-881-7000

Brady Cox
*brady.cox@alston.com*
Texas Bar No. 24074084
ALSTON & BIRD LLP
2200 Ross Avenue
Suite 2300
Dallas, Texas 75201
Tel: (214) 922-3400
Fax: (214) 922-3899

*Attorneys for Plaintiffs Nutramax
Laboratories, Inc. and Nutramax
Laboratories Veterinary Sciences, Inc.*

10

**PUBLIC VERSION**

## CERTIFICATION OF MEET & CONFER

Pursuant to Local Rule CV-7(i), on November 24, 2025, counsel for Nutramax met and conferred with counsel for Flashship on the subject of this motion. Flashship continues to assert that the documents and information sought to be compelled are not relevant and that it does not have an obligation to produce the sought documents or information.

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I hereby certify that I have this date filed the foregoing document via the Court's CM/ECF system, which will automatically give notice to all counsel of record for parties that have answered or otherwise appeared in this matter.

Because this document is being submitted under seal, I also certify that I have this date served the foregoing on counsel for Defendant Flashship Logistics, LLC by email pursuant to agreement of the parties.

This 23rd day of December, 2025.

/s/ Uly S. Gunn
Uly S. Gunn

**PUBLIC VERSION**

## CERTIFICATION OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to the Court's Protective Order at paragraph 13 [Dkt. No. 103], the Court has authorized filing under seal because Plaintiffs' Motion to Compel Production of Documents and Exhibits 6 and 12 to Exhibit A - Declaration of Uly S Gunn contain Classified Information designated by the parties.

This 23rd day of December, 2025.

/s/ Uly S. Gunn
Uly S. Gunn